[Civ. No. 1046.  Third Appellate District.—June 5, 1913.]

WILLIAM DOW, Respondent, v. THE CITY OF ORO-VILLE, Defendant; CONTRA COSTA CONSTRUC-TION COMPANY (a Corporation), Defendant and Appellant.

ACTION OF TORT—PLEADING—JOINT AND SEVERAL LIABILITY OF WRONG-DOERS.—In actions upon tort, where two or more persons have been concerned in the commission of the wrong, the plaintiff may proceed either jointly or severally against such joint tort-feasors, who are both jointly and severally liable, and, although the complaint may allege a joint act of negligence on the part of the joint tort-feasors, it nevertheless states a complete and separate individual liability against each party so sued on account of the single act complained of.

ID.—PLEADING—SUSTAINING DEMURRER AS TO ONE JOINT WRONGDOER.—Where a complaint seeks to charge jointly a city and a contractor for leaving a trench open in a public street, as a result of which the plaintiff received personal injuries, whether an order sustaining a demurrer to the complaint as to the city was erroneous is not material in determining the demurrer of the contractor.

Id.—Negligence—Unguarded Excavation in Street.—A contractor is liable for any personal injuries proximately caused by his act in digging and leaving open and unguarded an excavation in a public thoroughfare, whether he made the excavation with authority or not.

Id.—Agreement by City to Assume Responsibility for Contractor's Acts.—Even if the city by its agreement with the contractor expressly assumed sole liability for any damage to third persons resulting from a joint act of negligence of itself and the contractor, while the latter was engaged in the performance of the terms of the contract, such agreement could not deprive a third person of his right to proceed against the contractor, and hold him accountable for the effect of his negligent act.

Id.—Necessity of Pleading Agreement.—But if such agreement exonerated the contractor, it would be necessary for him to plead it as a special defense.

Id.—Demurrer—Uncertainty as to Matter Within Knowledge of Defendant.—Where it appears, as it does here, that the matter in respect to which the complaint is uncertain or ambiguous, was peculiarly within the knowledge of the defendant, such uncertainty or ambiguity is not a ground of demurrer of which the defendant can avail himself.

Id.—Knowledge of Unguarded Excavation—Evidence—Review on Appeal.—In this action to recover for personal injuries sustained by the plaintiff from falling into an unguarded trench in a public street, evidence that, although he knew that the streets in the city were torn up or excavated, he did not know of the excavation into which he fell, is not improbable *per se.* The probative value of such testimony is for the jury, and their solution will not be reviewed on appeal.

Id.—Evidence—Declarations of Plaintiff as to Suffering.—Declarations of the plaintiff, some three or four weeks after the accident, that he was then still suffering physical pain from the effects of his injuries, are admissible. It is only where complaints by the injured person of suffering pain flowing from his injuries refer to a past condition that testimony of such complaints is inadmissible.

Id.—Opinion Evidence—Testimony of Physician as to Personal Injuries.—Testimony of the physician who attended the plaintiff for his injuries that they could have been produced by the manner of the accident as described by the plaintiff, and that the atrophied condition of the latter's shoulder was probably due to the fact that the injury thereto caused the plaintiff to favor that member, is admissible.

Id.—Evidence — Testimony as to Compensation of Employee.—Where the plaintiff has been employed since the accident as night clerk in a hotel, a question "What are the wages of a night clerk in that hotel?" if improper in calling for a statement generally

as to the compensation of a night clerk and in not being confined to the compensation of the plaintiff, is not prejudicial.

Id.—Unguarded Trench in Street—Negligence of City as Absolving Contractor.—The negligence of the city in not having the street light burning at the time the plaintiff fell into the trench does not absolve the contractor from liability for his negligence in not guarding the trench properly.

Id.—Right of Contractor to Leave Trench Unguarded—Instruction.—An instruction is proper that the defendant had no right to dig a trench through the streets of the city and leave it open during the night-time without proper guards to prevent persons from falling into it; and that if he did not take such precautions and a person was injured, he is liable for such injuries.

Id.—Instruction Covered by Others.—A requested instruction that is covered by other instructions given to the jury is properly refused.

Id.—Instructions as to Statements of Counsel.—Where the jury is instructed that it is their duty "to find a verdict according to the testimony in the case," it is not necessary to warn them that they are not to take the statements of the counsel on either side as evidence.

Id.—Instruction—Cautioning Jury Against Testimony of Plaintiff.—An instruction cautioning the jury against the testimony of the plaintiff in a personal injury case because of his interest in the event of the trial is properly refused.

Id.—Damages for Personal Injuries—Whether Excessive.—Where personal injuries to a man result in the loss of four hundred and fifty dollars, from loss of time and the expense of medical attention, and also result in pain and suffering and permanent impairment of earning capacity, a verdict for one thousand seven hundred and fifty dollars is reasonable.

Id.—Physical Pain as Element of Damage.—Physical pain and mental suffering are elements to be considered in determining the measure of recovery for personal injuries.

APPEAL from a judgment of the Superior Court of Butte County and from an order refusing a new trial. John C. Gray, Judge.

The facts are stated in the opinion of the court.

Bernard Silverstein, W. H. Carlin, and Hamilton A. Bauer, for Appellant.

H. D. Gregory, for Respondent.

HART, J.—In this action for damages in the sum of five thousand four hundred and fifty dollars for personal injuries, alleged to have been sustained by him through the negligence of the defendants, the plaintiff obtained a verdict and judgment against the defendant, Contra Costa Construction Company, for the sum of one thousand seven hundred and fifty dollars, and this appeal is brought here by the said defendant from said judgment and the order denying it a new trial.

The legal soundness of the judgment and order is challenged upon these grounds: 1. Error in the overruling of the demurrer to the amended complaint as to the appellant; 2. Insufficiency of the evidence to justify and support the verdict; 3. Error in rulings admitting certain testimony; 4. Error in the giving and the refusal to give certain instructions; 5. Excessive damages.

From the evidence it appears that, on the sixth day of January, 1911, the city of Oroville, which, for convenience, will hereafter be referred to as "the city," and the defendant, Contra Costa Construction Company, which, for like reason, will be referred to as "the company," entered into a contract whereby the latter agreed to construct for the former, within its limits, a sewer system. By the terms of said contract, the company engaged to perform the work mentioned in accordance with "Design No. 2," as described in certain maps, plans and specifications specially prepared for that purpose, and was to furnish "all labor, material and supplies for a sanitary sewer system, liquifying tanks and sewage disposal works . . . and all material and labor necessary therefor."

In the execution of said contract, the company proceeded with the work therein provided for and described, digging trenches in the center of the streets of the city for the purpose of placing and laying the sewer pipes.

While on his way to his home from the business center of Oroville, on the night of the third day of April, 1911, at about the hour of 11 o'clock, the plaintiff fell into a lateral trench connecting with the main trench which had been dug by the company in Norton Street, in said city, said lateral trench crossing the westerly side of said Norton Street in a northerly direction. As the result of falling into the trench, the

plaintiff was more or less bruised and injured about his entire body, his legs being scratched and bruised, his head slightly injured and one rib fractured and "broken loose from the cartilaginous union," and several other ribs injured, but less seriously.

1. As to the city, the demurrer to the complaint was sustained and the action thereafter dismissed, but as to the company the demurrer was overruled.

It is here claimed that the court erred in its rulings upon the demurrer since, so it is argued, it was the duty of the city and not that of the company to safeguard and protect the public against any possible damage which might happen by reason of the existence of the excavations. This proposition, it is claimed, appears clearly from the averments of the complaint.

But the complaint is not obnoxious to the objections raised by the general demurrer, so far as the company is concerned. Whether the order sustaining the demurrer to the complaint as to the city was or was not erroneous, is a proposition with which we are not concerned, for it was not requisite, in order to state a case against the company, to join the city, although the tort might have been the result of the joint act of both. It is, in other words, well settled in this state that, in actions upon tort, where two or more persons have been concerned in the commission of the tort, the plaintiff may proceed either jointly or severally against such joint tort-feasors, who are both jointly and severally liable, and, although the complaint may allege a joint act of negligence on the part of the joint tort-feasors, it would nevertheless state a complete and separate individual liability against each party so sued on account of the single act complained of. (*Cole* v. *Roebling Construction Co.*, 156 Cal. 443, [105 Pac. 255]; *Fowden* v. *Pacific Coast etc. Co.*, 149 Cal. 157, [86 Pac. 178].) The amended complaint in the case at bar, in its original draft— that is, before the making of the order sustaining the demurrer as to the city—sought to jointly charge both the city and the company with the negligent act or omission which it is alleged proximately caused the plaintiff's injuries, and, assuming that the court's order sustaining the demurrer as to the city was correct, still the entire complaint stands so far as the company is concerned, and if, therefore, the act or

omission charged against both defendants is sufficient to make a case of negligence against the company alone, the order overruling the demurrer as to the latter must be sustained.

The complaint, after alleging that the defendant company "had, and caused to be dug, a deep and dangerous trench in and across said Norton Street, it being a lateral to the sewer then being constructed in said Norton Street," etc., avers, among other things: "That the defendants negligently and with gross negligence suffered and allowed said deep and dangerous trench to remain open, exposed and without proper protection, and without any light, or signal to indicate the existence of said trench or the existing danger, during the night on or about April 3, 1911"; that on said night, while the plaintiff was traveling on said street, going to his home, and was wholly unaware of danger and of the existence of said trench, and "was proceeding with due care for his own safety," he was, "without fault on his part precipitated into said trench," sustaining the bodily injuries heretofore described; "that through and by the negligence and gross negligence of defendants, plaintiff was injured as aforesaid to his great damage," etc.

We are unable to perceive how the complaint could have been more direct and specific in charging negligence against the company. It is true that the complaint does not disclose the nature of the relations existing, at the time the excavations were made, between the city and the company, or under what circumstances the latter came to make the excavations. And there can be no doubt that the complaint would have been a much more satisfactory pleading had it shown those facts; still, it was not necessary to do so in order to make out a case against the company, for it will not be disputed that the latter would be liable for any damage proximately caused by its act in digging and leaving open and unguarded an excavation in a public thoroughfare whether it made such excavation without having been authorized to do so by the proper authorities for a legitimate purpose or not. As was said, in *Barton* v. *McDonald,* 81 Cal. 265, 267, [22 Pac. 855, 856] : "If the defendant is guilty of negligence in repairing a street under a contract with the proper authorities, he is a wrongdoer. If he was guilty of negligence in repairing the street without any competent authority, he is *a fortiori* a wrongdoer. It is

enough that he left an unguarded hole in the street which he was planking, and that the plaintiff fell into it without any fault on his part.'' (See *James* v. *San Francisco,* 6 Cal. 528, [65 Am. Dec. 526] ; *Gay* v. *Engebretson,* 158 Cal. 21, 24, [139 Am. St. Rep. 67, 109 Pac. 876].) Nor, as counsel for the appellant claim would be true, would the mere recital in or disclosure by the complaint of the contractual relations subsisting between the city and the company, and by reason of which the excavations in the streets of the former were made, relieve the company from liability for the consequences of any negligence of which it might have been guilty in carrying on the work called for by its contract with the city. Even if the city by its contract had expressly assumed sole responsibility or liability for any damage to third parties proximately resulting from a joint act of negligence of itself and the company while the latter was engaged in the performance of the terms of the contract, such agreement by the city could not legally operate to deprive a third party of his right to proceed against the company and hold it accountable for the effect of its negligent act. Such party would be entitled, at his discretion, to sue both the city and the company jointly or separately, and enforce any judgment obtained by him against both or either, as the case might be, regardless of any agreement which might have previously been made by the joint tort-feasors by which the one or the other bound itself to become solely liable for any damage or injury which might attend or follow the execution of their contract. In other words, while such an agreement might be binding or enforceable as between the contracting parties, it could not have the effect of destroying the right of a third party, suffering damage through the joint negligence of such contracting parties in the performance of the contract, to hold either one or the other or both liable for the tort.

Furthermore, if the position of the defendant were maintainable, it should have pleaded the contract between the city and the company and thus have set up as a special defense the contractual relations subsisting between them at the time of the accident. As to the claims of the special demurrer, it is to be said that, assuming that the complaint, by reason of its failure to disclose the nature of the relations between the city and the company or to particularize the circumstances

leading to the excavation of the streets by the latter, may properly be said to be amenable to the objection of uncertainty or ambiguity or that it is objectionable for any reason which may with legal propriety be urged through a special demurrer, the defectiveness of said pleading in that respect was certainly overcome or cured by the scope which, as to the evidence, the trial embraced. Without objection, the contract between the city and the company was received in evidence and thus the relations between the city and the company and the cause and authority for the excavation of the city's streets by the company were as fully shown as they could have been had those facts been specially pleaded. Besides, where it appears, as it does here, that the matter in respect to which the complaint is uncertain or ambiguous, was peculiarly within the knowledge of the defendant, such uncertainty or ambiguity is not a ground of demurrer of which the defendant can avail himself. (Beatty, C. J., in *Doe* v. *Sanger*, 78 Cal. 150, 152, [20 Pac. 366].)

2. With respect to the circumstances directly attending the accident, there is no conflict in the evidence. As seen, the accident happened at about 11 o'clock at night, while the plaintiff, unaccompanied by any other person, was on his way home from the business center of the city. When the accident occurred no other persons were about in the vicinity of the trench, and the plaintiff's description of how and where he received his injuries constituted all the testimony concerning the accident or the circumstances immediately causing it. He testified that, while he knew, prior to the time the accident happened, that the main streets in Oroville were torn up or excavated, and was aware of the existence of the main trench in Norton Street near the point where he was injured, he did not know of the existence of the lateral trench into which he fell. His home, at the time of the accident, was situated about seventy-five yards distant from the point where the accident happened. He had resided at that place for some three months prior to the time of the accident. The testimony discloses that there was no dirt thrown up on the sides of the lateral trench, nor were there any barriers or lights maintained there for the protection of pedestrians against going into the ditch if traveling that night over Norton Street at that point. There is testimony which further shows that the

electric light usually maintained by the city near the point on Norton Street where the accident happened was not burning on the night of the occurrence, or, at any rate, at the particular time at which the accident occurred. In a word, the record discloses testimony amply sufficient to warrant the jury in finding, as manifestly they did find, that the immediate locality in which the plaintiff sustained his injuries was so dark at the time he fell into the trench that it would have been a physical impossibility for a person even of the most perfect eye-sight to have seen or discerned a mere hole in the ground.

It appears that a trail or path diagonally passed over and across Norton Street and led to and from the home of the plaintiff. This trail or path, it seems, the plaintiff was accustomed to traversing when going from and returning to his place of residence, and it was this path that he was walking over in the direction of his home when he fell into the ditch. But it may be just as well to let the plaintiff himself briefly tell the story of how the accident happened: "I was going home and I followed the trail up there to where it generally crosses the street to go across and then it was about seventy-five feet to the corner across there but this trail ran diagonally across the street. As I was walking along I didn't know there was any ditch there and the first thing I knew I found myself in it. The end of this path came along up the west side and turned diagonally across the road within about fifteen or twenty feet of where that trench is dug. . . . There were no banks of dirt piled up against there. I think that path across the trench was about three or four feet from the center of the street. There was a house on the opposite corner, on the corner of North Villa and Norton streets. This trail went over to the gate of that house. From there the trail went up Norton Street to the corner of North Villa and went up North Villa Street. There is no trail or sidewalk or anything on the east side of Norton Street and was not at that time. . . . The ditch that I fell in was open. There was no guard at all around it. There were no barriers or planks of any kind around there. There were no lights on or about that trench. . . . There was a light about two hundred and fifty yards from this trench where I fell in. . . . I was traveling at my regular travel as I would be going home.

It was pretty dark. I saw nothing there that would warn me that a trench was there. . . . I hit the bottom of the trench. I think I struck ·the other side of the trench first before I reached the bottom. I hit with the left side of my body.''

As stated, the testimony of the plaintiff is not contradicted by the testimony of any other witness. It is vigorously contended, however, that his testimony, in material particulars, is inherently improbable. The argument addressed to the support of this contention is that, having knowledge of the general condition of the streets of the city by reason of the work of installing the sewer system, which work had been in progress for some time prior to the date of the accident, and having on numerous occasions before the accident passed and repassed the point where the lateral trench into which he fell was located, he must of necessity have known of the existence of said lateral trench, and that having such knowledge, his precipitation into the ditch must have been due to inexcusable forgetfulness or lapse of memory on his part as to the existence of said ditch; that (so the argument proceeds) his asseverations of want of knowledge, prior to the accident, of the existence of the trench into which he fell are, under the circumstances as thus indicated, so obviously unreasonable that the jury should have viewed that portion of his testimony as improbable and, therefore, have found that his injuries were the result solely of his own negligence. We cannot agree to that argument. Addressed to those whose duty it was to decide in the first instance the questions of fact, the argument might possess considerable force, but we can perceive no inherent improbability or, upon its face, any want of verity in the statement of the plaintiff that, while aware in a general way of the excavations existing in the streets, he did not know of the existence of the particular trench which was the cause of the accident. To hold his testimony upon that question to be improbable *per se,* it would manifestly be necessary to declare it to be true, as an abstract proposition, that the plaintiff, from the fact that he frequently passed in close proximity to the point where the trench into which he fell was located, must of necessity have observed and thus have acquired knowledge of its existence before the accident. Such a proposition cannot, of course, be maintained. It is not difficult to conceive how a person having no special in-

terest in work of the magnitude of that in progress in the streets of Oroville at the time of the accident could overlook many of the smaller details of such work or the extent of its progress, although he had often been in the vicinity of the work and observed it in a general way. The general condition of the streets or the existence of the main excavations might and no doubt would be clearly enough impressed upon the average mind, but a mere branch trench such as the plaintiff walked into might very naturally be overlooked or not observed by one having no such concern with the work as would invite or compel his special attention to it and its various and numerous ramifications. Besides, the capacity for observation is not uniform in all persons. While one might be able, at a glance, to take in the full details of a transaction which has taken place in his presence, another, similarly situated as to opportunity, might obtain a very inaccurate or indefinite impression of even the main details thereof. Examples of this proposition are of frequent occurrence and found in those cases where witnesses, viewing the same transaction under precisely similar circumstances, with apparent honesty give widely divergent versions of the important particulars thereof. If their testimony involves nothing within the domain of the miraculous, and is reasonable upon its face, then the truth of the transaction must be extracted from the whole mass of conflicting testimony by the jury. There is nothing of the miraculous in the statement of the plaintiff in this case that, while knowing generally that Norton Street contained excavations, he was not aware of the existence of the lateral ditch that he fell into, nor can it be said that it does not reasonably conform "to our knowledge, observation and experience," which, says Moore on Facts (vol. 1, sec. 134), is the supreme test of the truth of human testimony.

It, therefore, follows that the probative value of the plaintiff's testimony, like that of all testimony which does not consist of the recital of facts the happening of which is not within the realm of human probability, involved a question whose solution was solely a function of the jury, and that, consequently, under the well understood rule in this state, an appellate court is precluded from reviewing it.

22 Cal. App.—15

3. The witness, Heimburger, was permitted to testify, over the objection of the defendant, that the plaintiff, some three or four weeks after the accident happened, declared to the witness that he was then still suffering physical pain from the effects of his injuries. This ruling is assigned as prejudicial error, but we can perceive no legal impropriety in it. The physical condition of the plaintiff at all times resulting from his injuries was a proper subject of inquiry in the ascertainment of the compensation to which he was entitled for actual damage thus sustained, and if, at any time after the injuries were received and before the trial of the action, he actually suffered physical pain as the result of such injuries, it was competent to show that fact not only by expert testimony, if thus it could be shown, but by his own declarations that, at the time such declarations were made, he was so suffering. In cases of this character, it is only where complaints by the injured party of suffering and pain flowing from his injuries refer to a past condition that testimony of such complaints is inadmissible. (*Lange* v. *Schoettler*, 115 Cal. 388, [47 Pac. 139]; *Green* v. *Pacific Lumber Co.*, 130 Cal. 440, [62 Pac. 747]; *Evarts* v. *Santa Barbara etc. Ry. Co.*, 3 Cal. App. 712, 716, [86 Pac. 830].) Here the testimony referred to a complaint by the plaintiff of suffering and pain experienced by him at the time such complaint was made.

4. Assignments Nos. 3 and 4 involve exceptions to the rulings of the court allowing Dr. Gates, who treated the plaintiff for his injuries, to testify that said injuries could have been produced by the manner of the accident as described by the plaintiff, and that the atrophied condition of the latter's shoulder was probably due to the fact that the injury sustained to the shoulder by the fall caused the plaintiff to favor that member and thus fail to so use or exercise it as to keep the muscles and tissues fully developed. These questions involved an inquiry into matters which are clearly the subject of expert testimony. The opinions of medical doctors as to the manner in which or the means by which a person may have received physical injuries are always receivable in evidence as those of experts in such matters. (*People* v. *Sampo*, 17 Cal. App. 150, [118 Pac. 957].) The answer to the second question above referred to was more favorable than not to the defendant and could not, therefore, be held prejudicial, even if it were true that it in-

volved the expression of an opinion upon a subject upon which the opinion of an expert may not be given in evidence.

5. For the purpose of showing that the injuries sustained by him had resulted in the permanent deterioration of his ability to earn a livelihood, the plaintiff testified that, since he was injured, he was unable to perform the same character of work and earn as much money as he was capable of prior to the accident, and that he had, after the accident, engaged in performing the duties of a night clerk at a hotel, and, among other questions propounded to him on this line of inquiry, was the following: "What are the wages of a night clerk in that hotel?" Over objection by the defendant to said question, the witness was allowed to reply: "Thirty dollars a month and board and lodging." It is argued that the question was improper because it called for a statement generally of the compensation paid to a night clerk in said hotel, and that the inquiry should have been confined to the ascertainment of the compensation paid to the plaintiff for such services and not as to the compensation others might receive or have received for the performance of like services at said hotel. Although it would perhaps have been the more proper course to have directly asked him what compensation he was receiving or had received for the performance of the services mentioned, the question objected to was intended to elicit the same fact indirectly and its tendency was to do so. If, as his answer clearly implies, the usual or ordinary compensation for such services was as he stated it to be, the natural inference is that he was receiving no greater compensation. From the nature of his answer, it is probable that the plaintiff understood the question to refer directly to the wages which he was receiving as a night clerk. In any event, he having testified generally that his earning power had been greatly impaired by reason of his injuries, the answer to the question could not have had the slightest damaging effect on the rights of the defendant.

6. Appellant declares that it was error for the court to instruct the jury that the defendant had no right to "dig a trench through the streets of Oroville and leave it open during the night-time without proper guards, such as lights or obstructions, to prevent persons from falling into it, and if it did not take such precautions and a person was injured, it is liable for such injuries."

We have heretofore briefly discussed the principle declared in the foregoing instruction and have held it to be applicable to the case of the defendant company here. It is not necessary to give it further consideration. The same observation applies to all those instructions, proposed by the defendant but rejected by the court, which, if given, would have declared to the jury that, because the electric light usually maintained by the city at the place where the plaintiff received his injuries was not lighted or burning at the time of the accident, the entire responsibility for the accident should be fastened upon the city—that is to say, that solely the city's negligence in that particular and not that of the company, even though it were itself guilty of negligence in the premises, should be found to have been the proximate cause of the plaintiff's injuries. Of course, as before shown, this is not the law. The city's negligence, if guilty of any, could not have the effect of absolving the company from liability for the consequences of any negligence of which it might have been guilty. And this would even be true if, as seems to be the theory (clearly erroneous) upon which the instructions referred to proceed, the relations between the city and the company in the execution of the work were, respectively, those of employer and employee or principal and agent, in the popular sense of those terms. (*Bradley* v. *Rosenthal,* 154 Cal. 423, [129 Am. St. Rep. 171, 97 Pac. 875].)

7. The principle stated in instructions Nos. 28, 29, and 30, requested by the defendant, but refused, was fully covered by instruction No. 21 which was read to the jury by the court, and it was not error to refuse to repeat it. The same is true of instructions 33 and 34 which the court refused to allow at the request of the defendant. The principles declared in those instructions were clearly stated in instructions 17 and 18 which constituted a part of the court's charge.

8. Instruction No. 7 which was read to the jury is criticised for the asserted reason that there was introduced at the trial no testimony to which the following language of the instruction was applicable: "That said trench was dug through and under said path and obstructed the same." The criticism of this instruction is without merit. The plaintiff testified that the lateral trench into which he fell crossed the path which ran diagonally across Norton Street and over which he was

traveling when he went into the ditch. Obviously, if the trench "crossed the path" said trench must have been "dug through and under said path."

9. Complaint is made of the refusal of the court to allow the following instruction: "The jury are instructed that they are not to take the statements of the counsel on either side as evidence, but that they must determine the facts only from the testimony of witnesses as given on the stand." It was not error to reject this instruction. Jurors would be woefully wanting in ordinary intelligence who would not themselves know and bear in mind, without being warned so to do, that, in considering the case and reaching a conclusion upon the issues, their sworn duty is to be governed by the evidence, under the rules of law laid down by the court in its charge, and not to be influenced by the mere arguments or statements made by counsel during the progress of the trial. The court, however, very clearly declared to them, in instruction 22, that it was their duty "to find a verdict according to the testimony in the case," and if such warning were at all necessary, that declaration by the court was sufficient to remind the jury of their very plain duty in deciding the questions of fact.

10. Instruction No. 27, proposed by the defendant, was properly disallowed. It would have cautioned the jury against the testimony of the plaintiff because of his interest in the event of the trial. Such instructions, dealing as they clearly do with questions of fact, are subversive of the constitutional rights of the parties to an action against whom they are given (Const. art. VI, sec. 19), and have frequently been condemned. (*Kauffman* v. *Maier,* 94 Cal. 269, 283, [18 L. R. A. 124, 29 Pac. 481]; *People* v. *Wardrip,* 141 Cal. 231, [74 Pac. 744]; *People* v. *Maughs,* 149 Cal. 253, [86 Pac. 187]; *People* v. *Ryan,* 152 Cal. 364, 369, [92 Pac. 853].)

The correctness of the court's action in the matter of some other instructions, given and rejected, is challenged, but these assignments do not require special attention in this opinion. It is to be said generally that the court's charge fully, fairly, clearly, and correctly declared to the jury all the principles of law applicable to the important issues raised by the pleadings and the proofs and essential to a just and intelligent consideration of the evidence by the jury.

11. It is lastly insisted that the verdict is excessive. The argument is that, since the complaint counts upon special damages to the plaintiff in the sum of four hundred and fifty dollars for loss of time for six months and for the expense of medical attention, the jury must have allowed the plaintiff the sum of one thousand three hundred dollars for mere "pain and suffering," and that such an amount on that account is manifestly so far in excess of the damage which the plaintiff could thus have suffered that it must be conclusively presumed that the verdict was influenced by passion and prejudice. But it is not to be assumed upon the record before us that the damages allowed in excess of the special damages pleaded were entirely on account of mere "suffering and pain." There is testimony that the earning capacity of the plaintiff was greatly impaired by reason of the injuries sustained by him, and this element of damages in actions for personal injuries is always of the utmost importance in the consideration and assessment of the compensation to which the injured party is entitled for the wrongs suffered by him through the negligence of the defendant. Physical pain and mental suffering are, of course, likewise elements to be considered. In the very nature of things, it is essentially true that for these as well as for depreciation in earning power, there does not exist any precise or exact measure of damages (*Zibbell* v. *Southern Pac. Co.*, 160 Cal. 237, 254, [116 Pac. 513]), but if the jury, having presumptively considered all these elements, where disclosed by the evidence, reach a verdict which is not "so grossly disproportionate to any reasonable limit of compensation warranted by the facts, as to shock the sense of justice, and raise at once a strong presumption that it is based on prejudice or passion rather than sober judgment," then neither the trial court nor a reviewing court is at liberty to interpose its judgment as against that of the jury. (*Harrison* v. *Sutter St. Ry. Co.*, 116 Cal. 156, [47 Pac. 1019].) We cannot say that the verdict is so excessive as to create and sustain the presumption that it was brought about through passion or prejudice. Indeed, it appears to us that, considering the extent of the injuries and of the result thereof to the plaintiff, the amount awarded to him by the jury was the extreme of reasonableness. That he was so injured as to permanently impair his earning capacity, is clearly enough made to appear, and that

he suffered much physical pain is an obvious proposition from the nature of his injuries.

Our conclusion is that the verdict is a just one and that no substantial legal reason has been presented for disturbing it.

The judgment and order are affirmed.

Chipman, P. J., and Burnett, J., concurred.