[L. A. No. 15766.   In Bank.—November 19, 1936.]

JOHN J. SHEA et al., Respondents, v. CITY OF SAN BERNARDINO (a Municipal Corporation), Appellant.

William Guthrie and H. R. Griffin, City Attorneys, and W. D. Evans and Lowell E. Lathrop, Deputies City Attorney, for Appellant.

Ray L. Chesebro, City Attorney (Los Angeles), Frederick von Schrader and Leon Thomas David, Assistant City Attorneys, and Bourke Jones, Deputy City Attorney, as *Amici Curiae* on Behalf of Appellant.

Swing & Swing and Ralph W. Eckhardt for Respondents.

WASTE, C. J.—The City of San Bernardino appeals from a judgment for plaintiffs in an action to recover damages for personal injuries received by plaintiff Georgia O. Shea while she was a passenger in an automobile driven by her husband, plaintiff John J. Shea, on the streets of the city. The cause is here by transfer, after decision and judgment in the Fourth District Court of Appeal, per Jennings, J.

The accident occurred at a point on "E" Street, San Bernardino, where said street intersects the right of way

of the Atchison, Topeka & Santa Fe Railway Company. The crossing was very rough. There was a break in the grade of the street at that point, and the north rail of the railroad track was three inches higher than the south rail. As the automobile proceeded at about twenty miles per hour across the intersection, the rear part of the vehicle was suddenly thrown upward, causing Georgia O. Shea to be precipitated to the floor of the car, thereby sustaining a fracture of the dorsal vertebra. This action was originally brought against both the city and the railway company, but was dismissed as to the railway company on motion of plaintiffs prior to submission of any evidence.

In affirming the judgment for plaintiffs, the District Court of Appeal passed upon numerous points raised on the appeal. Appellant apparently had no criticism to offer of the major portions of the opinion. The petition for hearing in this court states but two contentions: (1) Failure of the District Court of Appeal to properly dispose of the claim that the evidence was insufficient to sustain the judgment, because the city did not have control of that portion of the street upon which the accident occurred; and (2) that release of one joint tort-feasor (the railway company) operates as a release of the other (the city). The complaint alleged not only joint negligence of the railway company and the city, but also a complete and separate individual liability of each of these partes. After dismissal of the railway company, the question of liability of the city was at issue. Evidence was adduced showing the grade of ''E'' Street, a public street, and that the crossing had been established by city ordinance; that the street and crossing had been paved and improved under supervision and control of the city, and that the city had accepted this improvement work, negligently disregarding the fact that the crossing was left in a rough condition, with a break in the grade, and with a ''hump'' between the rails and for two feet on each side thereof. There was evidence that the city had both actual and constructive notice of the defective condition of the crossing, and that it was negligent in failing to see that the entire paving and improvement plan of the street was carried out and the defect remedied.

■ After stating the evidence in much more detail than we have synopsized it, the District Court of Appeal, through Jennings, J., said in its opinion:

"Since the work was done under the 1911 Improvement Act it may be conceded that the city council could have ordered the work to be done to a grade different from the established grade (sec. 3, Street Improvement Act of 1911, Stats. 1911, p. 733). However, the city which was proceeding to improve a public street within its boundaries was required either to order the work to be done to the grade which had been formally established or, in any event, to some indicated grade. In adopting a plan for the work it was not authorized to leave a portion of the street which was included in the work of improvement without any grade being determined to which the work should there be done.

■ In this connection, it must be remembered that the evidence showed that the paving of the right of way between the tracks and for a distance of two feet on each side thereof was done by the railway company. This was permitted by the provisions of section 77 of the Street Improvement Act. Presumably the city relinquished to the railway company the right to establish the grade to which the work of improving the right of way should be done. This the city was not entitled to do. Furthermore, in addition to relinquishing the right to establish the grade of the work over the right of way it was not entitled to leave an additional portion of the street which it was proceeding to improve for the benefit of the traveling public without making provision for the grade to which the work should there be done. . . .

■ "Some consideration should be given to the contention that the state railroad commission has exclusive jurisdiction to alter crossings at grade and that appellant was powerless to remedy the condition that existed at the railway right of way. This contention is necessarily based on the hypothesis that the difference in elevation of the rails was the single factor that was responsible for the defective condition that existed at the intersection. In giving consideration to appellant's contention that the city was powerless to remedy the defect the above-mentioned hypothesis will be assumed to be correct. Nevertheless, the contention is not impressive. It must be remembered that

the improvement of streets within the boundaries of a city is an affair in which the city is vitally interested. The governing board and officers of the municipality in dealing with such an affair may not complacently declare that they were powerless over a long period of years to take any steps to remedy a defective and dangerous condition that existed in one of the principal streets of the city. If the railroad commission had the exclusive jurisdiction to order the north track to be lowered it was the duty of the city at some time during the six-year period to call upon the railroad commission to order the rail to be lowered and thus to remove an obviously dangerous condition in the street. Finally, if it be assumed that the city was entirely powerless in the premises, had no control over the right of way, and was entitled, so far as the condition which existed at the right of way was concerned, to rely on the lack of power and control to relieve it from liability, it was nevertheless not relieved from the duty to warn persons lawfully using the street that a dangerous condition existed. ■ The evidence showed that no signs were exhibited giving warning to persons approaching the railroad crossing that it was a rough and dangerous crossing. It is our conclusion, based on all the facts and circumstances disclosed by the evidence, that appellant's contention of evidentiary insufficiency because of lack of control by the municipality over the particular place in the street where the accident occurred is not sustainable.''

■ As to the second contention of appellant, i. e., that the complaint does not state a cause of action by reason of the allegation of joint negligence of the city and the railway company, the District Court of Appeal says: ''Examination of the complaint discloses that it was undoubtedly drawn on the theory that respondent's injuries were caused by the joint and concurring negligence of the city and the railway company. Passing for the moment the question of the effect of the peculiar statute under which liability was sought to be imposed upon the municipality and treating the action as one brought against two joint tort-feasors, it is clear that no obstacle to recovery against one is presented because of the fact that the complaint charged only joint negligence. It is settled in California that in tort actions, when two or more persons have been concerned

in the commission of the tort, the injured party may proceed either jointly or severally against such joint tort-feasors who are both jointly and severally liable and although the complaint may allege only joint negligence on the part of the joint tort-feasors it nevertheless states a complete and separate individual liability against each party so sued on account of the single act of which complaint is presented. (*Fowden* v. *Pacific Coast etc. Co.*, 149 Cal. 151, 157 [86 Pac. 178]; *Cole* v. *Roebling Const. Co.*, 156 Cal. 443, 447 [105 Pac. 255]; *Dow* v. *City of Oroville*, 22 Cal. App. 215 [134 Pac. 197]. ''

■ In its petition for hearing in this court after decision and judgment in the District Court of Appeal, and for the first time, appellant raises the point that the dismissal of the action against the railway company was a release of the city. There is no merit in the contention. It does not appear that plaintiffs received any satisfaction for the injury. The discontinuance, as to one tort-feasor, of an action brought against several tort-feasors, no satisfaction having been received, does not release the others. (*Tompkins* v. *Clay Street R. R. Co.*, 66 Cal. 163, 164 [4 Pac. 1165]; *Drinkhouse* v. *Van Ness*, 202 Cal. 359, 381 [260 Pac. 869]; *Joyce* v. *Massachusetts Real Estate Co.*, 173 Minn. 310 [217 N. W. 337]; *Thomas* v. *Pugh*, (Tex. Civ. App. 1928) 6 S. W. (2d) 202, and cases from England and fifteen American jurisdictions cited in 50 A. L. R. 1091].)

■ Nor do we find any merit in the contention, stressed particularly by *amicus curiae*, that the plaintiffs are precluded from maintaining this action because of their asserted failure to comply with the provision of an act (Stats. 1931, p. 2475) requiring the presentment of a verified claim to the city council within ninety days after the accident occurred. The accident upon which this action is grounded occurred April 19, 1931, and the cited statute did not become effective until August 14, 1931, more than ninety days thereafter. Obviously, it was impossible for the plaintiffs to file such claim within ninety days after the accident for the prescribed period had completely expired prior to the effective date of the statute. The decisions declare that the provisions of the cited statute are mandatory and being remedial or procedural in character are applicable to situations where, as here, the accident antedated the effective

date of the act, as well as to situations where the accident occurred subsequent thereto. (*Spencer* v. *Calipatria,* 9 Cal. App. (2d) 267 [49 Pac. (2d) 320]; *Johnson* v. *Glendale,* 12 Cal. App. (2d) 389 [55 Pac. (2d) 580]; *Thompson* v. *Los Angeles County,* 140 Cal. App. 73 [35 Pac. (2d) 185]; *Norton* v. *City of Pomona,* 5 Cal. (2d) 54 [53 Pac. (2d) 952]; *Douglass* v. *City of Los Angeles,* 5 Cal. (2d) 123 [53 Pac. (2d) 353].) However, in the cited cases no proper verified claim was filed at any time by any of the several plaintiffs. When it was urged by the plaintiffs and appellants in the Norton case, *supra,* that it was impossible for them to comply with the requirement of the statute because, as here, the full ninety-day period had elapsed before the effective date of the statute, we declared: "This is true, but they still had, on August 14, 1931 [the effective date of the statute] three and one-half months remaining before their cause of action would become barred by the statute of limitation applicable to it. . . . They did not in fact commence their action thereon until December 31, 1931. During the intervening period they had ample opportunity to comply with the statute by filing their claim. No advantage could rightfully be claimed or gained by the city by reason of the fact that the claim was not filed within ninety days after the occurrence of the accident, because, in this case that requirement of the new law could not attach."

The quoted portion of the Norton decision covers this case. Here, as distinguished from the Norton case, the plaintiffs before filing their complaint filed a proper verified claim within ninety days after the effective date of the act when precluded from filing such claim within ninety days after the accident because of the expiration of that period before the act became effective. As declared in the Norton case, *supra,* this was sufficient under the peculiar circumstances here present.

■ It may not successfully be urged that the claim was not filed within ninety days after the effective date of the statute. As stated above, the act went into effect on August 14, 1931, and the plaintiffs filed their claim on November 12, 1931. Excluding the first day (August 14th) and including the last (November 12th), as required by sections 12 of the Code of Civil Procedure and the Political Code in the computation of time, it definitely appears that plain-

tiffs filed their verified claim on the ninetieth day after the effective date of the act which, as we have seen, was sufficient under our declaration in the Norton case.

However, if in computing the time we include the first day, as the defendant city would have us do, it would avail the city nothing, for then the last or ninetieth day would fall on November 11th, a legal holiday, which holiday would have to be excluded under the two cited code sections, thus making timely a filing, as here, on November 12th.

The judgment is affirmed.

Thompson, J., Shenk, J., and Seawell, J., concurred.