McDANIEL, J.
I respectfully dissent.
The majority have correctly identified the dispositive issue, and that is whether sections 875-880 of the Code of Civil Procedure, enacted in 1957 under the title of “Releases From and Contribution Among Joint Tortfeasors,” abridge the common law which dictates that the employer be released from liability if the claimant releases the employee who injured the claimant.
In holding that the result of such enactment was to abridge the common law and to introduce a rule which allows employer liability to remain even though the employee is released, the majority, in addition to pursuing only a cursory statutory analysis, says that “[a]ny doubt that these sections were intended to apply to respondeat superior situations was dispelled by Ritter v. Technicolor Corp. (1972) 27 Cal.App.3d 152 [103 Cal.Rptr. 686].” Ritter is flawed in its reasoning, and the statutory analysis offered by the majority begs the question.
Turning to Ritter, that opinion recites that “Plaintiffs’ complaint alleges that defendants Filmland Corp. and two individuals who dominated it made knowingly false representations to plaintiffs to induce them to enter into contracts with Filmland for distribution of films to be made or processed by co-defendants Technicolor Corporation and Eastman Kodak Company. Filmland and the individuals are alleged to have been the agents of Technicolor and Eastman. After the action was filed, and before any trial, plaintiffs filed a document headed ‘dismissal with prejudice as to defendants Filmland Corp., Thomas Laber and Joseph Boughlosky only.’ It recited: ‘The above-entitled action has been fully and finally settled and compromised and is hereby dismissed with prejudice as to defendants Filmland Corp., . . . Boughlosky and . . . Laber only, said dismissal to operate as a retraxit. ’ Defendant principals moved to dismiss the action as to them and the motion was granted. Plaintiffs appealed.” (Id. at p. 153.)
The Court of Appeal reversed the order of dismissal, purporting to do so based upon its interpretation of sections 875-880 of the Code of Civil Procedure, as earlier noted. The court dismissed out of hand the respondent’s argu *768 ment to the effect that the Legislature’s intent, underlying the sections noted, was only to eliminate the common law rule as it applies to joint tortfeasors (releasing all if one were released), and not to principals generally who are held answerable on some theory of vicarious or imputed liability. In reply to such argument, the Ritter court observed that section 877 does not use the term “joint tortfeasors” but rather “one or more of a number of tortfeasors claimed to be liable for the same tort.” (Id. at p. 154.) After the Ritter court pursued a superficial analysis of other sections in this 1957 legislation, which I view as seriously flawed as a matter of logic, the court declared, “We find inescapable the conclusion that under section 877, the liability of a principal for the tortious acts of his agent, even though wholly vicarious, survives release of the agent.” (Id.)
Contrary to the Ritter language just quoted, the marshalling of applicable precedents in the area of respondeat superior and an orthodox analysis of title 11 of part 2 of the Code of Civil Procedure (§§ 875-880) together massively demonstrate as a legal proposition that this enactment was never intended by the Legislature to include within the scope of its operable application a defendant whose liability is wholly vicarious. As a consequence, Ritter in my view was wrongly decided and should not be followed in this district.
My analysis proceeds along these lines. At common law, employers held liable on the basis of respondeat superior were not legally regarded as joint tortfeasors. At common law, a release of the employee operated to release the employer. Against this background, a careful scrutiny of the language of the pertinent sections of title 11, part 2 of the Code of Civil Procedure clearly discloses that such title applies exclusively to joint tortfeasors as they have been traditionally defined at common law. Based on this analysis, I conclude, Ritter notwithstanding, that plaintiff’s release of Augustine operated to release the County of Orange from liability both to plaintiff and to Zenith.
I
Common Law Definition of Joint Tortfeasor
While the term “joint tortfeasor” has not been statutorily defined in California, judicial definitions make it clear that mere joint or joint and several liability does not indicate that one is a joint tortfeasor. Rather, some action in causing the wrong complained of is necessary. For example, to constitute the parties “joint tortfeasors,” the following three elements must be present: (1) a concert of action; (2) a unity of purpose or design; (3) two or more defendants working separately but to a common purpose and each acting with the knowledge and consent of the others. (The Weinberg Co. v. Bixby (1921) 185 Cal. 87, 106-107 [196 P. 25]; Alexander v. Hammarberg (1951) 103 Cal.App.2d 872, 879 [230 *769 P.2d 399].) The term “joint tortfeasor” has also been used to describe one whose negligence, in concurrence with the negligence of another, has caused a single injury. (See Shea v. City of San Bernardino (1936) 7 Cal.2d 688, 693-694 [62 P.2d 365]; Carr v. Cove (1973) 33 Cal.App.3d 851, 854 [109 Cal.Rptr. 449]; Black’s Law. Dict., “tort-feasor,” (4th ed. 1951) p. 1661, col. 1: “To be ‘joint tort-feasors,’ the parties must either act together in committing the wrong, or the acts, if independent of each other, must unite in causing a single injury. [Citations.]”
H
Master/Servant Not Joint Tortfeasors
The relationship between an employer and an employee in a suit based solely upon the employee’s wrongful act is not that of joint tortfeasors. It has been a long-accepted rule that “ ‘[w]here the liability of one defendant is occasioned solely by the operation of law, and where this defendant is not an active participant in the actionable negligence alleged in the complaint, but is held under the doctrine of respondeat superior for the acts of its servants, such defendants are in no sense joint tort-feasors. ’ ” (Benson v. Southern Pacific Co. (1918) 177 Cal. 777, 779 [171 P. 948], original italics; see also Weddle v. Heath (1931) 211 Cal. 445,454-455 [295 P. 832]; Bradley v. Rosenthal (1908) 154 Cal. 420, 423 [97 P. 875]; Davison v. Diamond Match Co. (1935) 10 Cal.App.2d 218, 221-222 [51 P.2d 452]; Pacific Employers Ins. Co. v. Hartford Acc. & Ind. Co. (9th Cir. 1955) 228 F.2d 365, 373, cert. den., 352 U.S. 826 [1 L.Ed.2d 49, 77 S.Ct. 38].)
In the foregoing exposition, I have demonstrated that the employer in the case before us was not a joint tortfeasor. Turning to the other side of the analysis, i.e., to define what the employer’s role was rather than what it was not, the authority is equally explicit. The researcher first encounters section 2338 of the Civil Code which provides, “Unless required by or under the authority of law to employ that particular agent, a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business, and for his wülful omission to fulfill the obligations of the principal.” This section is a statutory recitation which includes the common law doctrine of respondeat superior. Under this doctrine, an employer, although personally innocent, is nevertheless liable for the torts of his employees committed within the scope of their employment. (Fernelius v. Pierce (1943) 22 Cal.2d 226, 233 [138 P.2d 12].) Such liability is wholly vicarious in that it rests not on the fault of the employer, but on that of the employee, making the employee’s responsibility primary and the employer’s secondary. (Continental Cas. Co. v. Phoenix Constr. Co. (1956) 46 Cal.2d *770 423, 429 [296 P.2d 801, 57 A.L.R.2d 914].) Responsibility depends solely upon the relationship of the employer and employee, and the question of proximate cause relates only to the act or neglect of the employee. (Fernelius v. Pierce, supra, 22 Cal.2d 226, 233.) This of course is also the rule in automobile casualty cases where, as here, the employee causes injuries while driving an automobile in the discharge of a duty for which he was employed. (Vind v. Asamblea Apostolica, Christo Jesus (1957) 148 Cal.App.2d 597, 602-603 [307 P.2d 85].)
In view of the foregoing long-standing precedents, it logically follows, because the employer’s liability is dependent on the third person’s right to recovery from the employee, that a verdict in favor of the employee operates to exonerate the employer. (Will v. Southern Pacific Co. (1941) 18 Cal.2d 468, 472-473 [116 P.2d 44].) In addition, a verdict exonerating the employee is inconsistent with a verdict against the employer and requires that the latter be reversed. (Davison v. Diamond Match Co., supra, 10 Cal.App.2d 218, 224.) Similarly, a judgment entered on a verdict in favor of the employee, when final, bars any action by the plaintiff against the employer based on the same cause. (Morehouse v. Wanzo (1968) 266 Cal.App.2d 846, 852 [72 Cal.Rptr. 607].) The rule applies whether the actions are separate or the employee and employer are joined in the same action. (Freeman v. Churchill (1947) 30 Cal.2d 453, 461 [183 P.2d 4].) Finally, the liability of an employee and employer who are sued jointly in a respondeat superior case cannot be segregated, thus the amount of compensatory damages awarded against the employee determines the amount for which the employer is liable. In other words, if the judgment against the employer, based on respondeat superior, is greater in amount than that rendered against the employee, the former will be reduced to conform to the latter. (Daniel v. Jones (1934) 140 Cal.App. 145, 147 [35 P.2d 198].) This indivisible and intertwined nature of the liability of the employer evolving solely from its relationship with the employee is especially illustrated by the proposition that a jury verdict against an employer must be reduced to the same amount of a judgment entered earlier by default against the employee sued in the same action. (Ponce v. Tractor Supply Co. (1972) 29 Cal.App.3d 500, 505-507 [105 Cal.Rptr. 628].)
m
Release of Servant Operates to Release Master
At common law, release of the servant operates to release a master liable solely under the doctrine of respondeat superior. “In a situation where several persons are not actively joint tort-feasors, but one person commits the tort and is primarily liable while the liability of the other person is derivative or secondary, as where it arises under the doctrine of respondeat superior, the *771 releasor’s acceptance of satisfaction from one, discharges the other as well, as in the case of master and servant or principal and agent; ...” (76 C.J.S., Release, § 50, p. 689, fhs. omitted, italics added; see also 53 Am.Jur.2d, Master and Servant, § 408, pp. 416-418; Annot., 92 A.L.R.2d 533, § 4[c], pp. 545-548.)
Numerous out-of-state court decisions have held, in the absence of statute, that release of the servant operates as a release of the master; Annotation (1963) 92 A.L.R.2d 533 contains an exhaustive catalogue of such decisions. More to the point here are those cases which have construed the effect of the Uniform Contribution Among Tortfeasors Act, upon which the 1957 California legislation is based. My research on this point shows that those jurisdictions which have considered this issue have reached divergent conclusions.
IV
Release of Servants Under the Joint Contribution Act
The Michigan courts have consistently held that a master and servant are not joint tortfeasors at common law and hence are not within the operation of the Michigan contribution among joint tortfeasors statute, one which expressly applies only to “joint tort-feasors.” (See Geib v. Slater (1948) 320 Mich. 316 [31 N.W.2d 65, 67-68] (overruled on other grounds, in Moore v. Palmer (1957) 350 Mich. 363 [86 N.W.2d 585]; Witucke v. Presque Isle Bank (1976) 68 Mich.App. 599 [243 N.W.2d 907, 909-912].)
Geib calls attention to the frequently careless use of the term “joint tortfeasor.” “Defendant [owner of the automobile that struck plaintiff ] is guilty of no tortious act; he did not participate in the commission of the tort; and his liability arises only by operation of law. He is not a joint tort-feasor, but his statutory liability is based upon the doctrine of respondeat superior. . . . Thus [the joint tortfeasors contribution act] is not a bar to the defendant’s plea in this case.” (Geib v. Slater, supra, 31 N.W.2d at pp. 67-68.)
Tennessee has also held that the release provision of its contribution among joint tortfeasors statute does not apply to actions against masters and servants. (Craven v. Lawson (Tenn. 1976) 534 S.W.2d 653, 655-656.)
On the other hand, at least four state courts and one federal court have held to the contrary under their statutes.
In Holve v. Draper (1973) 95 Idaho 193 [505 P.2d 1265] (Idaho), Smith v. Raparot (1967) 101 R.I. 565 [225 A.2d 666] (Rhode Island), and Alaska Airlines, Inc. v. Sweat (Alaska 1977) 568 P.2d 916 (Alaska), the courts held *772 that their states’ respective contribution statutes did not bar suit against a master or principal after release of the servant or agent; Mazer v. Lipschutz (3d Cir. 1963) 327 F.2d 42, interpreted Pennsylvania law to the same effect.
In Blackshear v. Clark (Del. 1978) 391 A.2d 747, the Delaware Supreme Court held that their contribution statute did not bar suit against a doctor after a settlement with the hospital had been reached. It is worth noting that in the Holve, Smith and Blackshear cases the courts reached their decisions on the basis of the definition of “joint tortfeasor” contained in their respective state statutes; that definition in each case was as follows: “two or more persons jointly or severally liable in tort for the same injury . ...” As the court in Holve stated: “That definition of a joint tortfeasor is exceedingly broad and goes beyond the traditional meaning of the term. ” (505 P.2d at p. 1267, italics added.)
Although the Alaska statute, as the California statute, contains no definition of joint tortfeasor, the Alaska court concluded that the text of the statute (“where two or more persons become jointly or severally liable”) revealed the Legislature’s intent to include defendants who were vicariously liable. (Alaska Airlines, Inc. v. Sweat, supra, 568 P.2d at 929-930.)
However, I conclude that the decisions in the latter cases are readily distinguishable from the one before us. Unlike the Idaho, Delaware and Rhode Island statutes, California’s title 11 does not contain a definition of joint tortfeasor; therefore, the traditional definition of joint tortfeasor applies.
V
The California Statute
The caption heading of title 11 provides an immediate clue to the scope of its coverage: “Releases From and Contribution Among Joint Tortfeasors. ” So too does the section heading of section 877: “Release of one or more joint tortfeasors-, effect upon liability of others.” “It is an elementary rule of construction that chapter and section headings in the codes are entitled to considerable weight in interpreting the various sections and should be given effect according to their import, to the same extent as though they were included in the body of the law. [Citation.]” (Gonzales v. Superior Court (1935) 3 Cal.2d 260, 263 [44 P.2d 320].) It is true, as the court in Ritter v. Technicolor Corp., supra, pointed out, that the body of section 877 goes on to refer to “one or more of a number of tortfeasors. ” However, it is also true that a 1980 amendment to the act restates the basic premise of section 877 as follows: “A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor from any further claims against the settling tortfeasor . . . . ” (Code Civ. *773 Proc., § 877.6, subd. (c).) In light of these arguably conflicting phrases, the issue becomes, which shall be adopted as controlling, the broader or the more narrow of the two? Again, the well-settled canons of construction regarding section titles is helpful: “The headnotes of the parts, titles and chapters of our codes are important elements in limiting and defining the sections found therein. (See In re Forthmann, 118 Cal.App. 332 . . . , and cases there cited.)” (People v. Fink (1932) 121 Cal.App. 14, 16 [8 P.2d 493], italics added.) “The ‘black letter’ heading or title of a section of one of our codes when, as here, a part of the enactment, is a part of the section itself and, in construing the section, any limitation, placed upon general language within the section and expressed in such heading, must be given effect. To refuse to do so ‘would be to make the law, not to administer it.’ (Sharon v. Sharon, 75 Cal. 1, 16 ....) This limitation of the scope of a code section exists even though the language of the section is unambiguous.” (In re Forthmann (1931) 118 Cal.App. 332, 336 [5 P.2d 472], italics added.)
There are other clues to the intended scope of title 11 within the body of the statute. As noted, my position here is in direct conflict with that of Ritter v. Technicolor Corp., supra, 27 Cal.App.3d 152; however, I have reached the interpretation I have not only for the reasons above, but because I view Ritter as having erroneously interpreted a reference to the vicarious liability situations in section 876 subdivision (b) so as to require that the entire title be applicable to such situations.
Section 876 is entitled “Determination of pro rata share,” and provides:
“(a) The pro rata share of each tortfeasor judgment debtor shall be determined by dividing the entire judgment equally among all of them.
“(b) Where one or more persons are held liable solely for the tort of one of them or of another, as in the case of the liability of a master for the tort of his servant, they shall contribute a single pro rata share, as to which there may be indemnity between them.”
This section does not relate to releases. It does nothing more than set out how pro rata shares are to be determined. The reference to master-servant-type situations in subdivision (b) is merely a clarification of the basic rule set out in subdivision (a): that while pro rata shares serve to distribute loss equally among joint tortfeasors via contribution, as between a negligent servant and a vicariously liable master, there is only one tortious act, and the master-servant unit is therefore liable for only one pro rata share, as to which there is no contribution but instead a right of indemnity.
Ritter also refers to the circumstance that section 875, subdivision (a) provides for contribution where “a money judgment has been rendered jointly *774 against two or more defendants in a tort action . . .’’as further evidence that the title’s release provisions apply in vicarious liability situations. Subdivision (a) reads in full: “(a) Where a money judgment has been rendered jointly against two or more defendants in a tort action there shall be a right of contribution among them as hereinafter provided.”
Section 875, subdivision (f) provides: “(f) This title shall not impair any right of indemnity under existing law, and where one tortfeasor judgment debtor is entitled to indemnity from another there shall be no right of contribution between them.”
Read as a whole, section 875 does no more than permit contribution between judgment debtors who are joint tortfeasors. It does not affect the existing legal relationship between a negligent servant and a vicariously liable master, and nothing therein contained implies that the Legislature intended to abrogate the common law rule that release of the servant releases the master.
This interpretation is further strengthened by the most recent amendment to title 11, which becomes operative July 1, 1983. (Stats. 1982, ch. 497, § 61, p. 2164.)
The amendment substitutes the heading “Contribution Among Joint Judgment Debtors” for the current heading of the title, which was “Releases From and Contribution Among Joint Tortfeasors.” Sections 875 through 880 are to be denominated as chapter 1, “Releases From and Contribution Among Joint Tortfeasors.” Three new sections, sections 881, 882, and 883, are added as chapter 2, “Contribution Among Other Judgment Debtors.”
Section 881 states “This chapter governs contributions among joint judgment debtors other than joint tortfeasors.” The remaining sections of chapter 2 relate to the right of such joint judgment debtors to contribution or repayment. Unlike chapter 1, chapter 2 does not provide that the release of one joint judgment debtor, as opposed to tortfeasor, shall not discharge any other joint judgment debtor.
The amendment clearly indicates that the term “joint tortfeasor” was not considered to include all joint judgment debtors, but rather was a subset of joint judgment debtors, and that the provisions of section 877 only apply to joint tortfeasors.
That sections 877 and 877.6, as explained above, refer to joint tortfeasor situations and not to vicarious liability situations is shown not only by the headings and language of the sections, but by the purpose of the sections. The objective of the release sections is to encourage out-of-court settlements. Out- *775 of-court settlements are encouraged because a joint tortfeasor who makes a good faith settlement is protected from further claims by any other joint tortfeasor for “equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.” (Code Civ. Proc., § 877.6, subd. (c).)
Moreover, American Motorcycle Assn. v. Superior Court (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899] and later cases such as People ex rel. Dept, of Transportation v. Superior Court (1980) 26 Cal.3d 744 [163 Cal.Rptr. 585, 608 P.2d 673], make it clear that partial or comparative indemnity is not the same as the indemnity between a negligent servant and a solely vicariously liable master, but is instead a common law principle developed as a means to avoid the earlier no-contribution rule and to allocate loss between joint tortfeasors. Because there is no protection from claims for indemnity of the kind applicable to vicarious liability situations, the statute provides no incentive for a negligent servant to settle, and is clearly inapplicable to such settlements. In other words, section 877.6 only applies in joint tortfeasor situations, and so, even though Augustine has settled, the county can still seek equitable indemnity from him despite the settlement.
Based on the foregoing, I would hold that the provisions of title 11, specifically those found in the sections pertaining to release, apply only to joint tortfeasors and are not applicable in cases where liability is based solely on vicarious liability. Therefore, the common law applies to such situations, and, as already pointed out, under the common law the release of an agent or employee operates also to release the principal or employer.
Without diluting the holding I recommend, there is a further aspect of this case which deserves comment. The imposition of liability upon an otherwise blameless employer under the doctrine of respondeat superior is unquestionably a policy choice of the common law. The principal justification, urged for the application of the doctrine, is that the employer, through insurance, is able to spread the risk of injury to third persons caused by his employees, and the employer can absorb the cost of such insurance as an expense of doing business. (Hinman v. Westinghouse Elec. Co. (1970) 2 Cal.3d 956, 960 [88 Cal.Rptr. 188, 471 P.2d 988].) In the long run, of course, it is the public who pays as such expense is reflected in the prices the public pays for goods and services.
In the case here, the plaintiff, without regard to the tort action she commenced against Augustine and the County of Orange, was compensated for her injuries by and received temporary disability benefits from her own employer’s worker’s compensation carrier. With this the fact, why should she be compensated again? In other words, when the reason for imposing vicarious liability *776 under the doctrine of respondeat superior is not present, the doctrine’s rule should not be applied.
Yet otherwise, plaintiff should be limited to a single recovery regardless of the number of potentially liable defendants. Here plaintiff suffered an injury caused by a single act of negligence committed by only one person. She has received full worker’s compensation benefits; she has also received $25,000 from the employee’s liability carrier.
These elements of the case bring me to note certain language in Ash v. Mortenson (1944) 24 Cal.2d 654 [150 P.2d 876], which actually involved multiple tortfeasors, i.e., the adverse driver, and the doctors who later were negligent in treating the plaintiff. In the course of its opinion, Ash recognized that other jurisdictions have followed the common law rule of unity of discharge as among joint tortfeasors, but then it observed that “a release of a cause of action against a wrongdoer is not a release of a separate or distinct cause of action against another independent wrongdoer.” (Id. at pp. 658-659.) The Ash court went on to say, however, that “[w]e are of the opinion that a release of the original wrongdoer should release an attending doctor from liability for aggravation of the injury ‘if there has been full compensation for both injuries but not otherwise. ’ [Citations.]” (Id. atp. 659.) Stated otherwise, recognizing the joint and several liability of joint tortfeasors, the court also recognized the rule that the plaintiff is only entitled to one recovery of his damages regardless of the number of joint tortfeasors.
In Ash, the plaintiff had sued the adverse driver, recovered a verdict for $15,000. The defendant driver paid $5,753.22 of the verdict and the plaintiff executed a satisfaction of judgment and released the driver from further liability. She then sued the doctors who treated her after the collision, alleging their malpractice. The defendant doctors argued, because the judgment rendered in the first action contemplated all of plaintiff’s injuries, that her giving a satisfaction of that judgment absolved the treating doctors. The Ash court rejected this argument because plaintiff had a separate and distinct cause of action against the doctors who were responsible for an independent wrong.
The Ash court then went on to concede that, “ [i]t has been held in some cases involving unliquidated tort demands that the payment of any sum in consideration of the release of one of several joint or independent concurrent tort feasors will be presumed to have been made and accepted as full compensation or satisfaction for the alleged injury. [Citations.]” (Id. at pp. 659-660.) It then rejected the application of that rule to the facts before it. It nevertheless pointed the way to a decision here when it stated, “The presumption of full compensation or satisfaction found in the cited cases must be based on the fact that there is but a single indivisible injury and that the claim arising therefrom is unliquidated.” (Id. atp. 660.)
*777 The supposed case distinguished by the Ash court is the precise one now presented here for decision, for there is no question but that the liability of the defendant employer, County of Orange, derives wholly from the negligence of its employee, the defendant Augustine. Noting again Ponce v. Tractor Supply Co., supra, 29 Cal.App.3d 500, it would represent an absurd anomaly, on the one hand, to have a rule which measures the liability of an employer as coextensive with an earlier default judgment against his employee sued in the same action, and on the other, a rule which allows the plaintiff to recover from the employee by way of a negotiated settlement while still holding the employer accountable.
I am satisfied that the Legislature did not intend to countenance such an absurdity, and that when it enacted title 11 it did not intend to abridge the common law in respondeat superior cases. In such cases there is but one participant, one tort, one injury, one claim for damages, and when that claim is satisfied, as to the employee, whether it be by settlement, jury exoneration, earlier default judgment, or other means, the exoneration of the employee necessarily exonerates the employer, for in terms of the legal posture of the matter, the predicate for holding the employer to account has been removed from the equation.
For the foregoing reasons, because the motion in limine should have been granted, I would reverse the judgment with directions to enter judgment for the County of Orange.
A petition for a rehearing was denied April 26, 1983, and appellant’s petition for a hearing by the Supreme Court was denied July 14, 1983. Mosk, J., and Richardson, J., were of the opinion that the petition should be granted.