Opinion
 

 OLIVER, J.
 
 *
 

 Plaintiff appeals the judgment (order) of dismissal in favor of defendant State of California (hereafter State) entered pursuant to a motion for summaiy judgment.
 

 Procedural Background
 

 Plaintiff filed his amended complaint for personal injuries on March 18, 1977. State’s answer was filed May 10, 1977. On February 9, 1978, State filed its motion for summary judgment supported by points and authorities and declarations of its counsel, Ruby A. Theophile, and James K. Smith, a licensed land surveyor. Plaintiff filed his points and authorities accompanied by his attorney’s declaration in opposition to the motion on March 8, 1978. Hearing on the motion was held on March 20, 1978, at which time the trial court made the following order (hereafter referred to as conditional order): “Motion granted unless plaintiff can
 
 *784
 
 by affirmative showing within ninety days demonstrate liability of State for plaintiff’s injuries.”
 

 On June 21, 1978, plaintiff filed a motion to set aside the foregoing order pursuant to California Code of Civil Procedure section 663,
 
 [1]
 
 accompanied by points and authorities and the supporting declaration of Harry J. Krueper, a civil engineer. A hearing date of July 13, 1978, was duly noticed. Order of dismissal was signed June 29, 1978, by the assistant presiding judge in the absence of the judge making the conditional order. Notice of entry of judgment ordering the dismissal was filed July 7, 1978. State’s points and authorities in opposition to plaintiff’s motion to set aside the order were filed July 14, 1978. On July 18, 1978, State mailed a “Notice of Ruling” to plaintiff’s attorney, which indicated the court had denied plaintiff’s motion to set aside the conditionally granted summary judgment.
 

 Issues
 

 Plaintiff contends: 1) The conditional order was improper as a matter of law or in the alternative an abuse of discretion, and 2) Triable issues of material facts were present precluding summaiy judgment.
 

 Analysis
 

 (1) Was the conditional order of March 20, 1978, improper as a matter of law or in the alternative an abuse of discretion? No.
 

 California Code of Civil Procedure section 437c provides: “If it appears from the affidavits submitted in opposition to the motion that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had
 
 or may make such other order as may be just.
 
 ” (Italics added.)
 

 
 *785
 
 Plaintiff’s contention that the trial court’s conditional order required him to prove liability against State by a preponderance of the evidence is contrary to the order’s plain meaning. The purpose of the order was to give plaintiff 90 days to demonstrate the existence
 
 of a triable issue
 
 regarding State’s liability if he could, not to “demonstrate liability by a preponderance of the evidence.” The conditional order was a fair and liberal exercise of the discretionary power of the court.
 

 Plaintiff’s motion to set aside the conditional order was filed on the 93 d day and was untimely. As a result, State prepared an order of dismissal, which was signed June 29, 1978.
 

 On July 13, 1978, pursuant to the noticed hearing given by plaintiff of his motion to set aside the conditional order, State appeared and another department of the superior court denied plaintiff’s motion to set aside the conditionally granted summary judgment.
 

 Since the moving and opposition papers to set aside the conditional order granting the summary judgment were considered by the trial court at the same time the court denied plaintiff’s motion on July 13, 1978, this court will also consider them in determining the propriety of the order of dismissal.
 

 The pleadings'.
 

 The charging paragraph of plaintiff’s amended complaint alleged: “That at all times prior to the date of the accident . . . defendants, and each of them, owned, occupied, controlled, designed, maintained, regulated and were charged with
 
 the duty of inspecting
 
 the aforementioned portion of Old Cajon Boulevard and the
 
 area surrounding said location, both improved and unimproved.
 
 On or about the date of the injury herein alleged and prior thereto, said location was in a dangerous condition which created a substantial and unreasonable risk of harm and great bodily injury to plaintiff. . . .” (Italics added.)
 

 Plaintiff’s amended complaint further alleged that State had knowledge of the existence of the dangerous conditions (i.e., (1) no warning signs or signals that the road suddenly ended; (2) no reflectorized guardrail or barricade across the highway beyond where it ended; and (3) the road’s design gave it the appearance it was part of the adjacent freeway and took no measures to protect against said dangers). Plaintiff also alleged that while a passenger in an auto traveling on the road, he
 
 *786
 
 was injured when the auto struck a barricade and fell 40 feet into an adjacent ravine. State answered, generally denying the allegations and as an affirmative defense alleged it did not own, control, or maintain the road.
 

 State’s motion for summary judgment was posited on the contention that it did not “own, control, maintain, occupy, regulate, or inspect or in any way exercise control over” the road nor have the authority to “take action to alter the condition existing thereon,” and that the County of San Bernardino since 1970 had such ownership, control, authority, etc.
 

 Plaintiff’s attorney’s declaration in opposition to the motion simply averred that State at the time it relinquished the road to the county retained an easement and retained ownership of the abutting ravine “into which plaintiff’s vehicle plunged.”
 

 Plaintiff’s moving papers to set aside the conditional order contained the declaration of a civil engineer who had been retained by plaintiff to prepare an analysis of the accident. His declaration indicated that at or about the time State relinquished the road to county, correspondence pertaining to traffic control measures as well as other safety measures (e.g., (1) end of road sign; (2) reflectorized barricade) passed between State and county; State created the ravine to carry off excess waters from the freeway; that State owned the ravine; and that at the time he inspected the site “. . . the barricade extended only part way across the entire width of the end of the road. Also, there were no indications of any warning devices being in place. Although one reflector had been erected, it appeared to have been knocked down prior to the accident. Thus, it appears that the safety measures ordered by State engineers were inadequately complied with.”
 

 State’s papers filed in opposition to the motion to set aside the conditional order assert that nothing new was added and that the declaration of the civil engineer contains conclusionary language and hearsay statements.
 

 The purpose of the summary judgment procedure is to penetrate through evasive language and adept pleading and ascertain the existence or absence of triable issues. The trial court makes this determination by examining the affidavits and declarations before it. Under well-established rules governing summary judgment motions, the affidavits of the moving party are to be strictly construed and those of the opponent
 
 *787
 
 liberally construed. Nevertheless, the party opposing the motion for summary judgment has the burden of showing that triable issues of fact exist.
 
 (DeSuza
 
 v.
 
 Andersack
 
 (1976) 63 Cal.App.3d 694, 698 [133 Cal.Rptr. 920].)
 

 Did the pleadings before the trial court at the time it conditionally granted the summary judgment or denied plaintiff’s motion to set aside the conditional order disclose the existence of triable issues of fact?
 

 The Easement:
 

 State’s liability, if any, stems from the California Tort Claims Act.
 
 [2]
 

 Plaintiff contends that State’s retention of an easement in the road relinquished to the county in 1970 creates an ownership interest in the land (i.e., the easement); the easement was therefore “public property” within the meaning of Government Code section 830, subdivision (c);
 
 [3]
 
 and as a result State as owner of the easement had the duty to protect against dangerous conditions on Old Cajon Boulevard. This premise stems from plaintiff’s reliance on a comment of the Law Revision Commission to Government Code section 830, subdivision (c).
 
 [4]
 

 It is fundamental that an “easement is an
 
 interest in the land of another,
 
 which entitles the owner of the easement to a
 
 limited use or enjoyment
 
 of
 
 *788
 
 the other’s land.” (3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, § 340, p. 2040, italics in original.)
 

 Plaintiff’s premise, if accepted, would mean that by State’s retaining a nonexclusive easement over Old Cajon Boulevard for purposes of ingress and egress to the adjacent and adjoining freeway it relieved county, as servient owner of the estate, from any duty to inspect for hazards. This is incorrect.
 

 A public entity is liable for injury caused by a dangerous condition of
 
 its property
 
 if (1) the property was in a dangerous condition at the time of the injury; (2) the injury was proximately caused by the dangerous condition; (3) the condition created a reasonably foreseeable risk of the kind of injury suffered; and either the condition was the result of the wrongful act or omission of the entity’s employee acting within the scope of his employment or the entity had actual or constructive notice of the condition a sufficient time prior to the injuiy to have corrected the dangerous condition. (Gov. Code, § 835,
 
 supra.)
 

 The fact the easement was “owned” by State, standing alone, creates no liability. “Property of a public entity” and “public property” mean real or personal property owned or controlled by the public entity. (Gov. Code, § 830, subd. (c),
 
 supra.)
 
 For liability to be imposed on a public entity for a dangerous condition of property, the entity must be in a position to protect against or warn of the hazard. (Gov. Code, § 835, subd. (b),
 
 supra.)
 
 Therefore, the crucial element is not ownership, but rather control.
 

 “... Where the public entity’s relationship to the dangerous property is not clear, aid may be sought by inquiring whether the particular defendant had control,
 
 in the sense of power to prevent, remedy or guard against the dangerous condition;
 
 whether his ownership is a naked title or whether it is coupled with control; and whether a private defendant, having a similar relationship to the property, would be responsible for its safe condition.”
 
 (Low
 
 v.
 
 City of Sacramento
 
 (1970) 7 Cal.App.3d 826, 833-834 [87 Cal.Rptr. 173], italics added.)
 

 Affidavits must contain facts sufficient to entitle a party to a judgment in the action. The facts stated therein must be set forth with particularity. The rule is well established that the movant’s affidavits should set forth evidentiaiy and not ultimate facts
 
 (Scheble
 
 v.
 
 Nell
 
 (1962) 200 Cal.App.2d 435, 439 [19 Cal.Rptr. 375]), while on the other hand, because of the
 
 *789
 
 drastic nature of summaiy judgments, counteraffidavits may state ultimate facts and to some extent at least conclusions.
 
 (Eagle Oil & Ref. Co.
 
 v.
 
 Prentice
 
 (1942) 19 Cal.2d 553 [122 P.2d 264].)
 

 In the instant case, State’s papers aver it relinquished ownership of the road to county in 1970 and reserved an easement for purposes of ingress and egress; that State’s use in the road owned by the county was limited to ingress and egress; and it had no authority to control or maintain Old Cajon Road.
 

 Plaintiff failed to produce facts controverting State’s clear showing it had given up “complete control” since relinquishing the road to the county. Therefore, plaintiff’s papers in opposition to the motion for summary judgment and to set aside the conditional order failed to create triable issues of fact arising from State’s retention of an easement for purposes of ingress and egress.
 

 The Ravine:
 

 Plaintiff next contends triable issues of fact are present because State owned the ravine into which the car he was riding plunged.
 

 Referring to the charging paragraph of plaintiff’s complaint
 
 (ante),
 
 liberally construed it included the adjacent ravine. (“. . . portion of Old Cajon Boulevard and the area surrounding said location, both improved and unimproved. . . .”)
 

 From the papers before the trial court, it reasonably can be inferred
 
 [5]
 
 that the chronology of events concerning the ravine were approximately as follows: (1) State constructed the I-15 freeway and to provide drainage, constructed a culvert beneath I-15, and a ravine which was adjacent to Old Cajon Boulevard—(the ravine being such that an automobile passing the terminus of the boulevard would run directly into it; (2) State then relinquished Old Cajon Boulevard to county and retained an easement for ingress and egress to maintain I-15; and (3) Some warning signs, line markings on the streets, and a reflectorized
 
 *790
 
 barricade were installed by county on its own initiative or as a result of State’s order or suggestion at sometime, which were either inadequate (in plaintiff’s view) or not properly maintained.
 

 Plaintiff’s thrust is that the ungraded open ravine at the terminus of Old Cajon Boulevard constituted a dangerous condition because it was foreseeable serious harm could result to occupants of autos who not being adequately warned of the existence of the ravine might drive into it.
 

 State concedes that property of a public entity may be dangerous if a condition on adjacent property exposes those using the public property to a substantial risk of harm. However, State then hypothesizes: “. . . if Old Cajon had inadequate traffic control and warning devices, a dangerous condition may have existed to persons travelling on Old Cajon, but not to persons using the ravine with due care. Clearly, it cannot be argued that a vehicle which accidentally plunges into a ravine is using the ravine either with due care or for its intended purpose.
 

 “. . .[Ojbviously, the ravine was not intended to be used as a roadway, and any issue of failure to warn would be relevant only to the condition of Old Cajon and not the ravine.”
 

 The sophistry of this is apparent. The thrust of plaintiff’s contention is not that the ravine itself is dangerous, rather, it only becomes dangerous if it is not barricaded at the terminus of Old Cajon Boulevard. Whether State created a dangerous condition presenting a foreseeable risk of harm to users of Old Cajon Boulevard by reason of an inadequately barricaded open and ungraded ravine adjacent to and at the terminus of the boulevard within the meaning of Government Code section 830 et seq. may only be resolved as a question of law if reasonable minds can come to but one conclusion.
 
 (Weirum
 
 v.
 
 RKO General, Inc.
 
 (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36];
 
 Richards
 
 v.
 
 Stanley
 
 (1954) 43 Cal.2d 60 [271 P.2d 23],
 
 Rogers
 
 v.
 
 Jones
 
 (1976) 56 Cal.App.3d 346, 350 [128 Cal.Rptr. 404];
 
 Bakity
 
 v.
 
 County of Riverside
 
 (1970) 12 Cal.App.3d 24 [90 Cal.Rptr. 541].)
 

 The scope of Government Code section 835,
 
 supra,
 
 and the extent of the duties imposed thereunder is a question of law.
 
 (Avey
 
 v.
 
 County of Santa Clara
 
 (1968) 257 Cal.App.2d 708, 712 [65 Cal.Rptr. 181].) Therefore, the threshold issue, determinative of State’s liability is a question of law—i.e., Did State have a duty to users of Old Cajon Boulevard to warn them of the presence of its open ungraded ravine at the terminus of the
 
 *791
 
 road? This question is dependent upon foreseeability of the risk of the kind of injury incurred as a result of the dangerous condition.
 
 (Goss
 
 v.
 
 State of California
 
 (1978) 82 Cal.App.3d 426, 429 [147 Cal.Rptr. 110].) No hard and fast rule can be laid down, for each case must depend on its own facts and whether a given set of circumstances creates a dangerous condition is primarily a question of fact.
 
 (Granone
 
 v.
 
 County of Los Angeles
 
 (1965) 231 Cal.App.2d 629 [42 Cal.Rptr. 34];
 
 [6]
 

 Bakity v. County of Riverside, supra,
 
 12 Cal.App.3d 24;
 
 De La Rosa
 
 v.
 
 City of San Bernardino
 
 (1971) 16 Cal.App.3d 739 [94 Cal.Rptr. 175].)
 

 Plaintiff’s contention that the condition of State’s inadequately barricaded open ravine, solely by reason of its proximity to the subject road, created a foreseeable risk of harm to users of the road requires us to consider the duty of an owner of adjacent land that may constitute a dangerous condition.
 
 [7]
 
 The official Law Revision Commission’s comments to Government Code section 830 state: “. . . But its own property may be considered dangerous if it creates a substantial risk of injury to adjacent property
 
 or to persons on adjacent property;
 
 and its own property may be considered dangerous if a condition on the adjacent property exposes those using the public property to a substantial risk of injuiy.” (Italics added.)
 

 Plaintiff adequately demonstrated that: (1) The ravine was owned by State; (2) Plaintiff’s vehicle plunged 40 feet into the bottom of it; (3) It was created by State to carry off excess amounts of water from the freeway; (4) It was located at the terminus of Old Cajon Road; (5) No adequate warnings or barricades concerning the presence of the ravine were present; and (6) Sometime prior to relinquishing the road to
 
 *792
 
 county, State notified county that the conversion of the road (from its then use) would require traffic control measures, signs, striping and “special warning devices as necessary.”
 

 Under such circumstances, it cannot be held as a matter of law that no duty rested on State to adequately barricade its ravine or to request county to provide warning devices or in some manner provide warning of the condition which there existed.
 
 (Rose
 
 v.
 
 County of Orange
 
 (1949) 94 Cal.App.2d 688, 691 [211 P.2d 45];
 
 Shea
 
 v.
 
 City of San Bernardino
 
 (1936) 7 Cal.2d 688 [62 P.2d 365].)
 

 The
 
 Shea
 
 and
 
 Rose
 
 cases by analogy are similar to the instant case. They are examples of situations where streets over which the respective public entities had control were made dangerous by conditions that they could not control.
 
 Shea
 
 involved a city street made dangerous by the elevation of railroad tracks (controlled by the railroad commission) over which its street crossed. In the
 
 Rose
 
 case, a county road ran at right angles into a state highway and terminated. There was a dangerous ditch at the side of the state highway opposite the end of the county road. In both cases it was held that though the public entity had no power to correct the dangerous conditions, they had control over their own highways and authority to post warnings of the dangers created by conditions contiguous thereto.
 

 Under such circumstances, whether State as owner of the ravine was required to barricade the ravine or post
 
 its
 
 property warning users of the road of the ravine’s existence create triable issues of fact. The principles that apply to summary judgment procedures are well established. The function of the trial court is to merely ascertain the presence or absence of factual issues
 
 (Walsh
 
 v.
 
 Walsh
 
 (1941) 18 Cal.2d 439, 441 [116 P.2d 62]); it does not decide the nature or truth of the facts themselves
 
 (Cal. Lettuce Growers
 
 v.
 
 Union Sugar Co.
 
 (1955) 45 Cal.2d 474, 488 [289 P.2d 785, 49 A.L.R.2d 496]); the purpose of the summary judgment procedure is not to try the issues, but to determine whether there are issues to be tried.
 
 (People
 
 v.
 
 Rath Packing Co.
 
 (1974) 44 Cal.App.3d 56, 61 [118 Cal.Rptr. 438]; 4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 191, p. 2840.) The affidavits are to be construed with all intendments in favor of the party opposing the motion
 
 (Desny
 
 v.
 
 Wilder
 
 (1956) 46 Cal.2d 715, 726 [299 P.2d 257]); the counteraffidavits are to be liberally construed and are sufficient if they disclose a possible defense or cause of action.
 
 (Eagle Oil & Ref. Co.
 
 v.
 
 Prentice, supra,
 
 19 Cal.2d at p. 556.) “Doubts as to the propriety of granting the motion should be resolved in favor of the
 
 *793
 
 party opposing the motion.”
 
 People
 
 ex rel.
 
 Riles
 
 v.
 
 Windsor University
 
 (1977) 71 Cal.App.3d 326, 331 [139 Cal.Rptr. 378].)
 

 Applying these principles, triable issues of fact were present and the motion for summary judgment should have been denied.
 

 Reversed.
 

 Gardner, P. J., and Tamura, J., concurred.
 

 A petition for a rehearing was denied July 24, 1979, and respondent’s petition for a hearing by the Supreme Court was denied September 20, 1979.
 

 *
 

 Assigned by the Chairperson of the Judicial Council.
 

 [1]
 

 Code of Civil Procedure section 663 provides: “A judgment or decree, when based upon findings of fact made by the court, or the special verdict of a jury, may, upon motion of the party aggrieved, be set aside and vacated by the same court, and another and different judgment entered, for either of the following causes, materially affecting the substantial rights of such party and entitling him to a different judgment: “1. Incorrect or erroneous conclusions of law not consistent with or not supported by the findings of fact; and in such case when the judgment is set aside, the conclusions of law shall be amended and corrected. “2. A judgment or decree not consistent with or not supported by the special verdict.”
 

 [2]
 

 Government Code section 835 provides: “Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: “(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or “(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.”
 

 [3]
 

 Government Code section 830, subdivision (c) provides: “ ‘Property of a public entity’ and ‘public property’ mean real or personal property owned or controlled by the public entity, but do not include easements, encroachments and other property that are located on the property of the public entity but are not owned or controlled by the public entity.”
 

 [4]
 

 Provides in pertinent part: “ ‘Property of a public entity’ excludes easements, encroachments and similar property, not owned or controlled by the public entity, that may be located on the property of the public entity in order to make clear that it is not the duty of the owner of the servient estate to inspect such property for hazards; rather, it it is the duty of the person or entity that owns the easement, encroachment, etc. . . .”
 

 [5]
 

 California Code of Civil Procedure section 437c in pertinent part provides: “In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the admissible evidence set forth in the papers and all inferences reasonably deducible from such evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from such evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact.”
 

 [6]
 

 The
 
 Granone
 
 case involved the changing of a natural water stream to provide a flood control channel. At page 651 the court said: . . Where the authorities who have planned and constructed an improvement have knowledge of circumstances which reasonably might be expected to result in a dangerous condition as a natural and probable consequence of the work, such authorities are put upon inquiry, and it follows that it is incumbent upon them to make inspections commensurate in scope with the nature and character of their knowledge and the peril which should be avoided. [Citing authorities.] As to what constitutes a dangerous or defective condition, no hard-and-fast rule can be laid down but each case must depend upon its own facts, and whether a given set of circumstances creates a dangerous or defective condition is primarily a question of fact.”
 

 [7]
 

 Government Code section 830, subdivision (a) considers the adjacent property element of the definition of dangerous condition. The pertinent portion is: “(a) ‘Dangerous condition’ means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used.”