[No. A032894. First Dist., Div. Five. Dec. 2, 1986.]

FOREMOST DAIRIES, INC., et al., Cross-complainants and Appellants,
v.
THE STATE OF CALIFORNIA, Cross-defendant and Respondent.

COUNSEL

Irving H. Perluss, Anthony C. Diepenbrock and Greve, Clifford, Diepenbrock & Paras for Cross-complainants and Appellants.

John K. Van de Kamp, Attorney General, and Richard G. Tullis, Deputy Attorney General, for Cross-defendant and Respondent.

OPINION

HANING, J.—Appellants Foremost Dairies, Inc., and Charles Bosman appeal from a summary judgment granted to respondent State of California (State) in appellants' action against the State for indemnity. Appellants were sued by third-party plaintiffs for personal injuries resulting when appellants' truck rear-ended plaintiffs' vehicle on a state highway obscured by smoke from a nearby fire.[1] Appellants cross-complained against the State for indemnity on the theory that a California Highway Patrol officer (CHP) at the scene either failed to warn or negligently acted in warning them of a dangerous condition.[2] We affirm.

The rules for review of summary judgments are well established and need not be recited. (See, e.g., Corwin v. Los Angeles Newspaper Service Bureau,

---

[1] Plaintiffs also named the State as a defendant, but did not proceed against it.
[2] Appellants also cross-complained against other parties who are not involved in this appeal.

*Inc.* (1971) 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953]; 6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 274 et seq.). "The motion [for summary judgment] shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

The material facts are not in dispute. They reveal that on June 26, 1983, at approximately 5 p.m. CHP Officer Douglas Pappas was operating his patrol car in the area of the interchange of Interstate Highway 5 (I-5) and State Route 162 near Willows. That interchange is a "cloverleaf" design with an overpass for State Route 162. At that time he observed that the southbound lanes of I-5 in the area of the interchange were partially obscured by smoke from a grass fire on adjacent, private property. He immediately radioed for fire assistance and drove to a point on the southbound lanes of I-5 approximately 450 feet north of the smoke.[3] He parked facing southbound on the right shoulder and activated the flashing amber light in the rear of his car, as well as his four-way emergency flashers, to caution southbound motorists on I-5.

Within three to four minutes after Officer Pappas had stationed his patrol car on I-5, Bosman, a truck driver employed by Foremost, approached the scene. Bosman was driving a truck southbound on I-5. When he was approximately one mile from the smoke, Bosman could see the fire, fire equipment at the scene, and the smoke obscuring the highway. The smoke was sufficiently high and dense to obscure the overpass of State Route 162 over the southbound lanes of I-5. At the same time Bosman also saw the CHP vehicle and the flashing amber light, and he had ample time to stop or slow his truck, but he interpreted the flashing amber light to mean he could proceed with caution. He contended that had the CHP car not been present as it was he would have exercised "considerable bit more caution." [*Sic.*] He proceeded into the smoke, which he described in deposition testimony as "driving into a fog," and struck the rear of plaintiffs' vehicle. He was driving 55 miles per hour when he first observed Officer Pappas and the smoke and other activity from a one-mile distance. He was traveling approximately 50 miles per hour when he entered the smoke. Prior to the time he entered the smoke, Bosman noted other southbound vehicles passing him.

Our first inquiry is whether the state owed a duty of care to appellants; to paraphrase Justice Kaus—to put the duty horse before the immunity cart.

---

[3]There is a dispute between the parties as to whether Officer Pappas was parked 450 feet or 200 yards north of the smoke. However, this is not a material fact within the context of this proceeding, and the parties do not suggest otherwise.

(*Williams* v. *State of California* (1983) 34 Cal.3d 18, 22-23 [192 Cal.Rptr. 233, 664 P.2d 137]; *Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 201-202 [185 Cal.Rptr. 252, 649 P.2d 894].) ■ In general, the CHP has the right, but not the duty, to direct traffic on state highways. Vehicle Code section 2410 states: "Members of the California Highway Patrol are authorized to direct traffic according to law, and, in the event of a fire or other emergency, or to expedite traffic or insure safety, may direct traffic as conditions may require notwithstanding the provisions of this code." The language of the statute is permissive rather than directive, and therefore imposes no duty on the CHP to act in any fashion, or to act at all. (See, e.g., *McCarthy* v. *Frost* (1973) 33 Cal.App.3d 872, 874-875 [109 Cal.Rptr. 470]; see also *Williams* v. *State of California, supra,* 34 Cal.3d at p. 24.)

■ Appellants contend that a "special relationship" existed, thereby imposing a duty of care on the state where one would not otherwise exist. "[A]lthough 'no special relationship may exist between members of the California Highway Patrol and the motoring public generally' . . . [citation], when the state, through its agents, voluntarily assumes a protective duty toward a certain member of the public and undertakes action on behalf of that member, thereby inducing reliance, it is held to the same standard of care as a private person or organization. [Citations.]" (*Williams* v. *State of California, supra,* 34 Cal.3d at p. 24.) A special relationship gives rise to "an 'initial duty' to come to the aid of others, regardless of whether there has been detrimental reliance in a particular case." (*Lopez* v. *Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 789 [221 Cal.Rptr. 840, 710 P.2d 907].) Once the duty arises, "[t]he breach of duty may be an affirmative act which places the person in peril or increases the risk of harm . . . ." (*Williams* v. *State of California, supra,* 34 Cal.3d at p. 24.) As characterized by *Lopez,* the statement in *Williams* "was essentially a particularized application of the 'good Samaritan' doctrine which provides that a 'volunteer who, *having no initial duty to do so,* undertakes to come to the aid of another . . . is under a duty to exercise due care in performance and is liable if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking' (*Williams,* 34 Cal.3d at p. 23, italics added)." (*Lopez* v. *Southern Cal. Rapid Transit Dist., supra,* 40 Cal.3d at pp. 788-789; see also *Clemente* v. *State of California* (1985) 40 Cal.3d 202, 213-214 [210 Cal.Rptr. 445, 707 P.2d 818].)

■ Appellants contend that by positioning his patrol car as he did and flashing his amber warning light, Officer Pappas created a special relationship requiring him to exercise a duty of care toward them. Specifically, they contend he should have either "put down flares, or gotten out of his patrol vehicle and signalled traffic with a 'wave down' gesture, or done something more than simply activating his flashing amber light."

We conclude that no special relationship existed. Officer Pappas did not undertake any action toward appellants which can reasonably be interpreted as inducing their reliance on a representation that the smoke-obscured highway ahead was suitable for high-speed travel. He did not place appellants in peril, nor increase their risk of harm. He acted only to alert them to the fire activity and the presence of smoke on the highway ahead, and to remind them to proceed with caution. This is precisely how his actions were perceived by Bosman, who was already fully cognizant of the situation ahead, and who interpreted the flashing amber light to mean he should proceed cautiously.[4] (See, e.g., *Williams* v. *State of California, supra,* 34 Cal.3d 18 [no special relationship created requiring CHP officers during traffic investigation to collect evidence for civil suit]; *Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197 [185 Cal.Rptr. 252, 649 P.2d 894] [no special relationship requiring police to protect customer in laundromat from assault by suspect under surveillance]; *Harris* v. *Smith* (1984) 157 Cal.App.3d 100 [203 Cal.Rptr. 541] [no special relationship requiring police to arrest drunk driver who subsequently caused injury to plaintiff]; *Rose* v. *County of Plumas* (1984) 152 Cal.App.3d 999 [199 Cal.Rptr. 842] [no special relationship imposed a duty on deputy sheriffs responding to fight in a tavern to render medical aid or collect evidence]; *Stout* v. *City of Porterville* (1983) 148 Cal.App.3d 937 [196 Cal.Rptr. 301] [no special relationship requiring police to take intoxicated person into custody for his own protection]; *Jackson* v. *Clements* (1983) 146 Cal.App.3d 983 [194 Cal.Rptr. 553] [no special relationship required police investigating a party to take intoxicated minors into custody to prevent them from subsequently driving while intoxicated]; *Bonds* v. *State* ex rel. *California Highway Patrol* (1982) 138 Cal.App.3d 314 [187 Cal.Rptr. 792] [no special relationship requiring CHP to remove abandoned vehicle on side of highway]; *Mikialian* v. *City of Los Angeles* (1978) 79 Cal.App.3d 150 [144 Cal.Rptr. 794] [no special relationship requiring police to place flares to protect tow truck operator removing damaged vehicle].) Thus, in the absence of a special relationship imposing a duty of care, we need not reach immunity issues. (*Williams* v. *State of California, supra,* 34 Cal.3d 18; *Davidson* v. *City of Westminster, supra,* 32 Cal.3d 197.)

■ Appellants alternatively contend that the State may be held liable to them on the ground that their loss was caused by a dangerous condition of State property. Liability for injury caused by a dangerous condition of public

---

[4]Bosman contends that had it not been for Officer Pappas, he would have exercised greater caution. However, regardless of the degree of caution he would have exercised he was, in either event, governed by Vehicle Code section 22350, which provides: "No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for . . . visibility, the traffic on, . . . and in no event at a speed which endangers the safety of persons or property."

property is statutorily regulated. Government Code section 835 states:[5] "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that . . . . (b) The public entity had actual . . . notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." " 'Protect against' [as used in § 835] includes repairing, remedying or correcting a dangerous condition, providing safeguards against a dangerous condition, or warning of a dangerous condition." (§ 830, subd. (b).) "Section 815 . . . declares: (a) a public entity is not liable for any injuries except as provided by statute: and (b) any statutorily established liability is subject to both statutory immunities and the defenses that would be available to the public entity were it a private person." (*Hayes* v. *State of California* (1974) 11 Cal.3d 469, 471 [113 Cal.Rptr. 599, 521 P.2d 855].)

Thus, even if a plaintiff establishes that a public entity had timely notice of all the elements comprising a dangerous condition of public property, the public entity is not liable for injuries proximately caused by the dangerous condition if it renders an adequate warning.

It is undisputed that a warning was given. Whether the warning was adequate is ordinarily a question of fact, but it may "be resolved as a question of law if reasonable minds can come to but one conclusion. (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36]; *Richards* v. *Stanley* (1954) 43 Cal.2d 60 [271 P.2d 23], *Rogers* v. *Jones* (1976) 56 Cal.App.3d 346, 350 [128 Cal.Rptr. 404]; *Bakity* v. *County of Riverside* (1970) 12 Cal.App.3d 24 [90 Cal.Rptr. 541].)" (*Mamola* v. *State of California* ex rel. *Dept. of Transportation* (1979) 94 Cal.App.3d 781, 790 [156 Cal.Rptr. 614].)

We conclude this is such a case. Appellant Bosman was fully aware of the dangerous condition; he received a warning from Officer Pappas to proceed with *caution*; he understood the warning to be related to the smoke on the highway; and he understood it to mean he should proceed with caution. A public entity is not liable for failing to warn of a condition of which the plaintiff is fully aware. (*Belcher* v. *City and County of S. F.* (1945) 69 Cal.App.2d 457, 463 [158 P.2d 996]; *Bunker* v. *City of Glendale* (1980) 111 Cal.App.3d 325, 333 [168 Cal.Rptr. 565], dis. opn. of Beach, J.) Any sugges-

---

[5]Unless otherwise indicated, all further statutory references are to the Government Code.

tion that the actions of Officer Pappas could reasonably be interpreted as a representation that it was safe to drive into the smoke at high speeds is untenable.

For purposes of our analysis we have assumed that those issues claimed by appellants to be triable issues of material fact are resolved in their favor. We thus find it unnecessary to address those issues or the additional responses by the state.

Affirmed.

Low, P. J., and King, J., concurred.