Filed 1/22/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FARID HEDAYATZADEH,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>THE CITY OF DEL MAR,<br><br>    Defendant and Respondent. | D074690<br><br><br><br>(Super. Ct. No. 37-2017-00014136-CU-PO-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Jacqueline M. Stern, Judge.  Affirmed.

Khashayar Law Group and Daryoosh Khashayar for Plaintiff and Appellant.

Devaney Pate Morris & Cameron and William C. Pate for Defendant and Respondent.

Farid Hedayatzadeh (Hedayatzadeh) appeals following the trial court's summary judgment in favor of the City of Del Mar (the City) in his lawsuit arising out of the death of his 19-year-old son, who was struck by a train on an oceanfront bluff in Del Mar on

property owned by North County Transit District (NCTD).  Specifically, Hedayatzadeh contends that the trial court erred in granting summary judgment on his single cause of action alleging a dangerous condition of public property based primarily on the City's failure to erect any barriers to prevent pedestrians from accessing NCTD's train tracks. We conclude that the trial court properly granted summary judgment, and we accordingly affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

On the night of September 24, 2016, 19-year-old Javad Hedayatzadeh drove to Del Mar with two friends.[1]  They parked at the end of 13th Street, a City street which terminates at an ocean bluff.

A railroad right-of-way owned by NCTD runs along the top of the ocean bluff, perpendicular to the end of 13th Street.  As stated in a land surveyor's declaration submitted by the City, NCTD's right-of-way is 100 feet wide near 13th Street.[2]  Although the record is not clear about where the City property ends and the NCTD right-of-way begins, the parties agree that a sloped dirt embankment begins after the end of 13th Street

---

[1]     Unless otherwise noted, we base our recitation of the factual background on the facts that the parties agreed upon as undisputed in the course of their briefing of the summary judgment motion.

[2]     Hedayatzadeh appears to agree, as shown by map attached to the surveyor's declaration, that the City property begins approximately 50 feet to both the west and east of the center of the train tracks (amounting to a total 100 foot width of the right-of-way), but he points out that the width may be less to the west in some places because of bluff erosion.

2

and leads down to the area where the train tracks are located.  A guardrail on City property prevents automobiles from continuing past the end of 13th Street to reach NCTD's right-of-way, but pedestrians are able to walk around the guardrail to access NCTD's right-of-way and the train tracks.  It is common knowledge, and undisputed by the parties, that members of the public frequently walk around the guardrail and access NCTD's right-of-way to walk next to the train tracks on the ocean bluff.[3]  It is also undisputed that, throughout the years, multiple train-related injuries, fatalities and near misses have occurred on the tracks that run along the bluff through the City.

On the night at issue, Javad[4] and his friends walked around the guardrail at the end of 13th Street, down an unimproved dirt embankment, and crossed the train tracks.  The group then walked northbound on the west side of the tracks to a spot where they sat and smoked marijuana.  They knew they were trespassing on NCTD property.  At various

---

[3]  Hedayatzadeh points out that the City places a trash can at the end of 13th Street, which he views as an acknowledgment by the City that people illegally enter the NCTD right-of-way from 13th Street.  The parties dispute whether the trash can is intended to collect trash from people who illegally enter the NCTD right-of-way, or, as the City contends, from people who travel to the end of 13th Street to watch the sunset.  However, the presence of the trash can is not relevant here because the City does not dispute that it has notice that people access the NCTD right-of-way by walking around the guardrail at the end of 13th Street.

[4]  For the sake of clarity we refer to Javad by his first name, and we intend no disrespect by doing so.

3

points along the railroad right-of-way, NCTD has installed signs stating "No Trespassing," "Danger" and "Railroad Property."[5]

Javad noticed a freight train coming from the south and told his friends that he was going to use his phone to take a video "selfie" of himself next to the train. As Javad was near the train tracks taking the selfie, he was struck by the train and killed.

The location where Javad was struck by the train is more than 50 feet from the City's property to the east and more than 40 feet from the City's property to the west. The City does not perform any maintenance of the NCTD right-of-way and has no authority to correct any defects on the NCTD property.

After filing an unsuccessful claim under the Government Claims Act (Gov. Code, § 905),[6] Javad's father, Hedayatzadeh, filed this lawsuit against the City, NCTD, and BNSF Railway Company, which allegedly operated the freight train. As relevant here, the operative first amended complaint alleged a single cause of action against the City for dangerous condition of public property.[7] As alleged in the first amended complaint, "The property adjacent to the railroad tracks and right[-]of[-]way were . . . owned, maintained, managed and controlled by [the City] . . . and by virtue of the proximity of

---

[5] The public is able to access the beach from the City's streets at a legal railroad crossing to the north at 15th Street without illegally trespassing on NCTD's property.

[6] Unless otherwise indicated, all further statutory references are to the Government Code.

[7] The first amended complaint alleged a cause of action for dangerous condition of public property against NCTD and causes of action for negligence and willful misconduct against BNSF Railway Company.

the adjacent property to the railroad tracks and its use to access recreational areas open to the public by the public, the property adjacent to the railroad right[-]of[-]way was in [a] dangerous condition as it exposed the using public to a substantial risk of injury when the property was used in a reasonably foreseeable manner."

The City filed a motion for summary judgment based on several independent grounds: (1) as matter of law, the City's own property was not in a dangerous condition; (2) the alleged dangerous condition of the City's property was not a proximate cause of Javad's death; (3) to the extent the cause of action was based on failure to warn, the City had no duty to warn of an obvious danger, and section 830.8 precludes liability for failure to provide a warning sign;[8] and (4) recovery is barred by the doctrine of primary assumption of the risk.

After considering the evidence and argument presented by the parties, the trial court granted summary judgment, basing its ruling on the first ground identified by the City. As the trial court explained, "The Court finds that Plaintiff has not met his burden of showing a triable issue of material fact that the City created, enhanced, or intensified a danger to the public. . . . Plaintiff's evidence, which formed the basis for the Court's tentative ruling, demonstrates that the City was aware of pedestrians illegally accessing the railroad right-of-way from the City's property at 13th Street in order [to] reach the adjacent coastal bluffs. This fact does not show that a condition of the City's property

---

8    Section 830.8 states, "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code."

increased or enhanced the risk of injury which arises from the occasional passing of trains. Plaintiff has not submitted evidence demonstrating that a feature of 13th Street encouraged users to trespass onto the right-of-way. Moreover, it is undisputed that a legal railroad crossing was available just a few blocks away at 15th Street."[9]

Hedayatzadeh appeals from the judgment.

## II.

## DISCUSSION

A.    *Legal Standards Applicable to Review of a Summary Judgment*

Code of Civil Procedure section 437c, subdivision (c) provides that summary judgment is to be granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. A defendant "moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) A defendant may meet this burden either by

---

[9]    In focusing on the issue of whether the City "created, enhanced, or intensified a danger to the public," the trial court was apparently referring to the rule that " '[i]f the risk of injury *from third parties* is in no way increased or intensified by any condition of the public property . . . courts ordinarily decline to ascribe the resulting injury to a dangerous condition of the property. In other words, there is no liability for injuries caused *solely* by acts of third parties. . . . Such liability can arise only when third party conduct is coupled with a defective condition of property.' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1137 (*Zelig*), italics added.) Although we understand the trial court's reliance on that legal principle, we will explain in our analysis that the case law concerning public liability due to hazards on adjacent property is the more directly applicable authority in this case.

showing that one or more elements of a cause of action cannot be established or by showing that there is a complete defense.  (*Ibid.*)

If the defendant's prima facie case is met, the burden shifts to the plaintiff to show the existence of a triable issue of material fact with respect to that cause of action or defense.  (*Aguilar*, *supra*, 25 Cal.4th at p. 849; *Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 261.)  "[T]o meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .' " (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477.)  Ultimately, the moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law."  (*Aguilar*, at p. 850.)

We review a summary judgment ruling de novo to determine whether there is a triable issue as to any material fact and whether the moving party is entitled to judgment as a matter of law.  (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972.)  " 'Since defendant[ ] obtained summary judgment in [its] favor, "we review the record de novo to determine whether [it has] conclusively negated a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial." ' "  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.)

7

B.      *The Law Governing Liability for a Dangerous Condition of Public Property*

The only cause of action pled against the City alleged a dangerous condition of public property, which is a basis for liability set forth in the Government Claims Act and governed by specific statutory standards.

" '[A] public entity is not liable for injuries except as provided by statute (§ 815) and . . . section 835 sets out the exclusive conditions under which a public entity is liable for injuries caused by a dangerous condition of public property.  "[T]he intent of the [Government Claims Act] is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances:  immunity is waived only if the various requirements of the act are satisfied." ' "  (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1129.)

Section 835 sets forth the following requirements for liability based on a dangerous condition of public property:

> "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> "(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> "(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."  (§ 835.)

8

"A dangerous condition exists when public property 'is physically damaged, deteriorated, or defective in such a way as to foreseeably endanger those using the property itself,' or possesses physical characteristics in its design, location, features or relationship to its surroundings that endanger users." (*Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1347-1348 (*Cerna*).) As stated in the relevant statute, "[a] condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used." (§ 830.2.)[10] Thus, although "[t]he existence of a dangerous condition ordinarily is a question of fact, . . . the issue may be resolved *as a matter of law* if reasonable minds can come to only one conclusion." (*Zelig*, *supra*, 27 Cal.4th at p. 1133, italics added.)

C.      *As a Matter of Law, No Dangerous Condition Exists on the City's Property*

As we have explained, it is undisputed that the railroad right-of-way, which consists of the train tracks and an area approximately 50 feet to both the west and east of

---

[10]     Similarly, section 830, subdivision (a) defines "dangerous condition" as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."

the tracks is owned and controlled by NCTD, not by the City. Although the exact boundaries are not clear from the record, the City's property terminates somewhere near the guardrail that is at end of the 13th Street. Hedayatzadeh takes the position that the City's property poses a dangerous condition because (1) it is *adjacent* to NCTD's right-of-way containing the train tracks; (2) the train tracks pose a danger to trespassers; and (3) the City has not taken any action, such as constructing a fence at the location of the guardrail at the end of 13th Street, to prevent pedestrians from walking around the guardrail and trespassing on NCTD's train tracks. The City argues that summary judgment was properly granted because, as a matter of law under the undisputed facts, the lack of a barrier on the City's property preventing the public from accessing NCTD's right-of-way does not give rise to a dangerous condition of public property.

We begin our analysis with the undisputed principle that—to some extent and under certain circumstances—a hazardous condition on an *adjacent* property may give rise to liability for a dangerous condition of public property. The California Law Revision Commission comments to section 830 explain the circumstances under which liability may arise due to a hazardous condition on an adjacent property. " ' "Adjacent property" as used in the definition of "dangerous condition" refers to the area that is exposed to the risk created by a dangerous condition of the public property. . . . [¶] . . . A public entity may be liable only for dangerous conditions of its own property. But its own property may be considered dangerous if it creates a substantial risk of injury to adjacent property or to persons on adjacent property; and its own property may be considered dangerous if a condition on the adjacent property exposes those using the

10

public property to a substantial risk of injury.' " (*Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 147, 148 (*Bonanno*), quoting Cal. Law Revision Com. com., reprinted at 32 West's Ann. Gov. Code (1995 ed.) foll. § 830, p. 299.)

The Law Review Commission comment provides examples of situations in which liability may arise because *the public property itself contains a hazard* that injures someone on an adjacent property. "A tree located on public property may have a decayed limb overhanging private property and creating a hazard to that property and the persons on it. Explosives on public property may create a hazard to a wide area of private property adjacent to the public property." (Cal. Law Revision Com. com., 32 pt. 2 West's Ann. Gov. Code (2012 ed.) foll. § 830, p. 7.)

Although not illustrated by the Law Review Commission comments, case law illustrates the circumstances under which liability may arise in the *converse* situation— present here—where *a hazard on an adjacent property* gives rise to liability for a dangerous condition of public property when persons using the public property are exposed to injury. Referring to adjacent hazards encountered by motorists during use of a public highway, our Supreme Court has explained that "a public entity can be held liable for an accident caused by a condition that exists on property *adjacent* to a public highway if the condition ' "is *so connected with or in such proximity to* the traveled portion of the highway as to render it unsafe to those traveling thereon." ' " (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 841, italics added, citing *Bakity v. County of Riverside* (1970) 12 Cal.App.3d 24, 30 [trees on adjacent property created a dangerous condition of public property because they obstructed motorists' view of

11

approaching vehicles on the county highway]; see also *Rose v. Orange County* (1949) 94 Cal.App.2d 688, 691 [a county could be liable for a dangerous unprotected ditch along a state road that intersected a state road when it did not install a stop sign or warn of the ditch for drivers proceeding directly from the county road].) Similarly, pedestrians are subjected to a dangerous condition of public property when a public walkway abuts a dangerous condition on adjacent property that pedestrians might unwittingly fall into while using the public walkway. (*Marsh v. City of Sacramento* (1954) 127 Cal.App.2d 721, 724 [demolition of a private building adjacent to a city sidewalk left an unprotected eight-foot drop off from the sidewalk]; *Jordan v. City of Long Beach* (1971) 17 Cal.App.3d 878 [a hole and protruding pipe located directly adjacent to city pavement posed a dangerous condition of public property to pedestrians using the city pavement].)

Similarly, public entities have been held liable for undertaking an *affirmative act*, such as deciding to locate a public facility in a certain place or providing a particular means of access to an adjacent hazard, that put users of the public property into danger from adjacent property. Three cases illustrate this principle.

In *Bonanno*, *supra*, 30 Cal.4th 139, a transit authority was liable for a dangerous condition of public property because it chose to locate a bus stop at a location that encouraged bus patrons to cross a county street at a dangerous location to reach the bus stop, although a less dangerous location was available. (*Id*. at p. 151.) Relying on the principle that "hazards present on adjoining property may create a dangerous condition of public property when users of the public property are necessarily exposed to those risks" (*id*. at p. 149), *Bonanno* explained that even though the hazardous traffic was on the

12

adjacent county street, the transit authority "owned and controlled its own bus stop, and a condition of *that* property, its physical situation, caused users of the bus stop to be at risk from the immediately adjacent property." (*Id*. at p. 151.)

Next, in *Branzel v. City of Concord* (1966) 247 Cal.App.2d 68, 75, a city lot designated for flying model airplanes constituted a dangerous condition of public property because the city chose to locate the flying field adjacent to electric power lines that posed a risk of electrocution if a model airplane got out of control and contacted the power lines while a person was holding the long wire line attached to the model airplane. *Branzel* explained, "While the City did not maintain or control the power lines, it did maintain the flying field in a location so close to them that[,] in the light of the known use of the field[,] the involvement of the field with the lines could be reasonably anticipated." (*Ibid*.)

Finally, in *Joyce v. Simi Valley Unified School Dist.* (2003) 110 Cal.App.4th 292 (*Joyce*), a junior high school principal ordered a hole cut in a fence next to a crosswalk on a city street to encourage students to cross at that intersection, even though the intersection was dangerous, especially after the city increased the speed limit. (*Id*. at pp. 296, 300.) *Joyce* held that the open school yard gate was a dangerous condition. "Although [the school district] did not control the crosswalk, it did control whether an opening in the fence should be made. The open gate was built next to the crosswalk to encourage students to cross at an uncontrolled intersection. It diverted children from a safer, signal-controlled intersection less than 500 feet away." (*Id*. at p. 299, fn. omitted.) As *Joyce* explained, liability for a dangerous condition of public property was warranted

13

because the school district "was aware of the dangerous intersection but insisted on keeping the gate open after City increased the speed limit" (*id*. at p. 300), and "a reasonable trier of fact could find that the open gate was a dangerous condition that could have been remedied by simply closing the fence opening and directing students to cross at the signal." (*Id*. at p. 299.)

However, case law does not extend liability to circumstances in which the public entity has not engaged in any affirmative act regarding the use of its property (such as locating a public facility in a dangerous place or deciding to create an opening in a fence to entice children to cross a dangerous intersection), but has merely failed to erect a barrier to prevent users of the public property from leaving the public property and willfully accessing a hazard on adjacent property.[11] Two cases are illustrative.

First, in *Avey v. Santa Clara County* (1968) 257 Cal.App.2d 708, the city owned Fremont Avenue, on which a grocery store was located. (*Id*. at p. 710.) Children waiting at a bus stop on state-owned El Camino Real would sometimes run across that street and traverse a state-owned traffic island, and then cross Fremont Avenue to buy treats at the

---

[11]	In contrast, when the hazard exists *on the public property itself*, case law has approved the principle that a public entity may be required to erect a barrier to prevent the public from accessing the hazard. (*Constantinescu v. Conejo Valley Unified School Dist.* (1993) 16 Cal.App.4th 1466, 1474-1475 [school district had a duty to erect barriers to protect against danger to children on school property from parents driving in crowded and chaotic school parking lot]; *Mamola v. State of California ex rel. Dept. of Transportation* (1979) 94 Cal.App.3d 781, 791-792 [declining to conclude as a matter of law that the state did not have a duty to erect a barricade to prevent drivers on a county road from driving into a state-owned ravine]; *Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707, 719 [the state was liable for failing to provide a median barrier on a freeway to protect from injury from oncoming cars].)

grocery store.  (*Ibid*.)  In returning to the bus stop, the children would reverse the trip, running across Fremont Avenue, the traffic island and El Camino Real to the bus stop. (*Ibid*.)  After children were twice killed by automobiles on El Camino Real when returning to the bus stop from the grocery store, plaintiffs alleged that the city was liable for a dangerous condition of public property because it did not erect a barricade or take other measures to prevent children from crossing from Fremont Street to the county-owned traffic island and El Camino Real.  (*Id*. at pp. 710-712.)  *Avey* rejected plaintiffs' theory of liability as a matter of law, holding that "such a barricade was not required under section 835 in the exercise of ordinary care by defendants to maintain its street in a reasonably safe condition."  (*Id*. at p. 713.)

Second, *Durham v. City of Los Angeles* (1979) 91 Cal.App.3d 567, rejected liability in a case involving an injury that incurred on train tracks accessed from a city street.  In *Durham* a boy was either trying to hop a train or was throwing rocks at a train when he was struck by the train and injured.  (*Id*. at p. 570.)  The city maintained a crosswalk near the accident, which ended at the easement owned by the Southern Pacific Railway, where the railroad tracks were located.  (*Id*. at p. 575.)  A lawsuit against the city alleged that the crosswalk constituted a dangerous condition of public property because the city "should have given appropriate warning or erected and maintained suitable barriers since it had knowledge of the existence of the dangerous condition (the train) adjacent to its property."  (*Id*. at p. 576.)  *Durham* rejected liability as a matter of law stating, "The City's property in the case at bench was in no way defective and could not be considered dangerous except in relation to the railroad tracks.  As in *Avey* . . . we

15

find no duty on the political entity to erect some sort of barricade in order to maintain its street in a reasonably safe condition." (*Id*. at p. 577.)

After having reviewed the relevant case law concerning public liability for hazards on an adjacent property, we conclude that this case is analogous to *Avey* and *Durham* where, as a matter of law, public liability does not arise for failure to erect a barrier preventing the public from willfully accessing a hazard on an adjacent property. Here, based on the principle illustrated in *Avey* and *Durham,* the City is not liable as a matter of law for merely failing to erect a barrier at the site of the guardrail to prevent pedestrians from choosing to enter a hazardous area on NCTD's adjacent right-of-way.

Unlike in the cases where public liability arose due to a hazardous condition on an adjacent property, the City did not, in failing to install a pedestrian barrier at the guardrail, create any condition of public property that necessarily endangered members of the public who use the City streets. Persons who travel to the end of 13th Street are not required to walk toward the train tracks and encounter any hazard on NCTD's right-of-way. Instead, a person must make a decision to walk around the guardrail, down an embankment and toward the train tracks before encountering any hazard. Further, unlike in *Joyce*, *supra*, 110 Cal.App.4th 292 where children were encouraged to enter a dangerous intersection, and *Bonanno*, *supra*, 30 Cal.4th 139, where the location of the bus stop encouraged people to cross a dangerous street, nothing about the City's property

entices or encourage members of the public to put themselves in danger by entering a hazardous area on adjacent property.[12]

Hedayatzadeh relies on *Holmes v. City of Oakland* (1968) 260 Cal.App.2d 378, 381, which concerned the issue of whether a city could be liable due to the presence of a railroad track adjacent to a public street. However, as we will explain, *Holmes* is inapposite because children were involved and because the hazardous train tracks were directly adjacent to the city street. In *Holmes* an elementary school was near a public street on which railroad tracks were located. Many students crossed the tracks on their way home from school and were attracted to playing on or around the trains. The plaintiff alleged that the city should have remedied "this attractive and dangerous

---

[12]    Hedayatzadeh argues that the City is liable for a dangerous condition of public property because certain city officials, at some point, may have taken the position that trespassers on the NCTD right-of-way should not receive citations from NCTD under most circumstances. According to Hedayatzadeh, this position "encouraged" pedestrians to trespass on the right-of-way. However, the argument fails because, as the case law we have cited establishes, a public entity is liable for a dangerous condition on an adjacent public property *only if some physical aspect of the public property itself* (such as the location a bus stop or an opening in a school fence) necessarily brings a user of that property into contact with the danger on the adjacent property or entices the user of the public property to encounter the adjacent hazard. "A plaintiff's allegations, and ultimately the evidence, must establish a *physical* deficiency in the property itself. [Citation]  A dangerous condition exists when public property 'is *physically* damaged, deteriorated, or defective in such a way as to foreseeably endanger those using the property itself,' or possesses *physical characteristics* in its design, location, features or relationship to its surroundings that endanger users." (*Cerna*, *supra*, 161 Cal.App.4th at pp. 1347-1348, first italics in original.) Although a City position asking NCTD to refrain from issuing citations to people trespassing on NCTD's right-of-way might make trespassing more common if NCTD heeds the City's suggestion, the City's position does not support a cause of action for a dangerous condition of public property against the City because that *position* is not a physical aspect of the public property itself and does not concern the City's property in any way.

17

condition . . . by imposing restrictions on the operation of the trains, or by providing guards or other safeguards, at the time when children were on their way home from school." (*Id*. at p. 381.) The court reversed the trial court's order sustaining a demurrer, and held that the city could be liable for a dangerous condition of public property. "[I]f the City does not own or control the railroad right-of-way it is nevertheless liable to plaintiff on the basis that the City's public property consisting of that portion of Lowell Street running along the right-of-way is dangerous because a condition on the adjacent right-of-way exposes those using the public property to a substantial risk of injury." (*Id*. at p. 389.) "In the light of the allegations that children going home from school on Lowell Street customarily were attracted to the trains and railroad cars and played about them, it is not unreasonable to conclude that children were foreseeable users of the railroad right-of-way, that such use and the danger inherent therein were reasonably foreseeable, that the City was required to take reasonable precautions to protect children from that risk." (*Id*. at p. 387.) Here, in contrast, the use of the City's street does not subject a member of the public to the same type of immediate danger from an adjacent property as was at issue in *Holmes*. NCTD's train tracks are not directly adjacent to a City street and are not in the normal route that children take home from school. Instead, in this case, to incur any kind of injury on the train tracks, pedestrians (whom we necessarily assume to be reasonable adults) must decide to go around a guardrail, down an embankment and over a wide area of NCTD property to reach the train tracks.

18

In sum, we conclude that, as a matter of law, the City's property at the end of 13th Street does not constitute a dangerous condition of public property even though the City has not taken action to prevent pedestrians from accessing the train tracks on NCTD's adjacent right-of-way by walking around the guardrail at the end of 13th Street. Accordingly, the trial court properly granted summary judgment in favor of the City.[13]

DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:

BENKE, Acting P. J.

GUERRERO, J.

---

[13] As we conclude that summary judgment is warranted on the ground that the City's property does not constitute a dangerous condition as a matter of law, we need not and do not address the other possible grounds for summary judgment discussed in the parties' briefing.